# WOOD v. McCAIN.

1. S., a practising physician, being about to leave home temporarily, made R. his agent by verbal appointment, with a general authority to transact all business for him in this State, and left with him his books and accounts for professional services, "*for settlement :*" Held, that as it respected the books and accounts, the authority of the agent was restricted by the terms "for settlement;" and he was not authorized to assign them to a surety of his principal, to indemnify the surety against the consequences of his suretyship.

2. Where a principal, with a knowledge of all the circumstances of the case, deliberately ratifies the acts, doings, or omissions, of his agent, he will (in general) be bound thereby, as fully to all intents and purposes as if he had originally given him direct and ample authority in the premises. But where a third person acquires rights after the act is done, and before it has received the sanction of the principal, the ratification cannot operate retrospectively, so as to overreach defeat those rights.

**3.** Where one acting as an agent of a third person, goes beyond his authority in making an assignment of debts due his principal, and a creditor of the principal causes a garnishment to be served upon his debtor, the subsequent ratification of the assignment by the principal cannot overreach and defeat the lien of the garnishee. .

Writ of error to the Circuit Court of Talladega.

THE defendant in error having recovered a judgment against Wm. A. Revis and Elisha B. Stedman, made the affidavit required by statute, and caused a garnishment to be issued and served on sundry persons supposed to be debtors of Stedman, among whom were John S. Smith. This garnishee appeared and answered, that he was indebted to Stedman for professional services as a physician, rendered in 1840, to the amount, as he understood, of ninety-six dollars, which was due on the first of January, 1841. Some few days previous to the service of the garnishment, the garnishee was informed by Mathew Wood, that he need not consider himself Stedman's debtor any longer, that the books or accounts of the latter had been transferred to him. Wood produced no written transfer, and the garnishee made no promise of payment.

In conformity to law a notice was issued, requiring Wood to appear and contest with the plaintiff, the right to the money owing by the garnishee. Wood appeared, and an issue was made up and submitted to a jury for the trial of that question, who returned a verdict for the plaintiff, and judgment was rendered accordingly. From a bill of exceptions sealed at the trial of the facts of the case, and the ruling of the Court thereupon, may be thus briefly stated, viz: sometime before the garnishment issued, Stedman left the State on a visit, having first made Revis his agent by mere verbal appointment, with a general authority to transact all business for him in this State; he left with his agent his books and accounts for medical services, (including the account of the garnishee,) for settlement. Wood was informed that the plaintiff intended to garnishee the debtors of Stedman, and being a surety of the latter in a promissory note for one thousand dollars, discounted by the State Bank, immediately applied to Revis for indemnity against the consequences of his suretyship. Accordingly, on the 26th January, 1841, Revis executed a deed in Stedman's

101

name, transferring the books and accounts of his principal to Wood, and then delivered the same to the assignee, who forthwith notified the garnishee of the fact, and instructed him to pay what he owed to him, (assignee,) or his order.

The deed of assignment was rejected as evidence, because there was no *written authority to execute it.* About March, 1841, Stedman returned to the State, and on being informed of the transfer and delivery of the books and accounts to Wood, forthwith ratified the same.

The Court charged the jury, that it was not competent for Revis to make the transfer of the books and accounts, as he had done, and that the ratification did not legalize it.

S. F. RICE and T. D. CLARKE, for the plaintiff in error, made these points: 1. Revis had a sufficient authority to execute the deed ; it was not necessary that his agency should have been in writing. The delivery of the books and accounts was an act which Stedman's dissent could not have avoided; but if this be not so, his ratification was equivalent to a precedent authority. [Bates & Hines v. The State Bank, 2 Ala. Rep. 452 ; 1 Sch. & Lef. Rep. 22 ; 12 Johns. Rep. 102 ; 17 Mass. Rep. 98 ; 8 Pick. Rep. 9, and cases there cited; 15 Id. 302 ; 2 T. Rep. 188, note ; 13 Mass. Rep. 178 ; Id. 379 ; 15 Id. 39 ; 4 Ala. Rep. 258.]

2. Revis was a general agent, and the presumption is, that he was authorized to make the assignment. The Court had no right to require written evidence under seal appointing the agent, as a condition of its admission ; the deed was clearly admissible—the sufficiency of the evidence was a question for the jury.

W. P. CHILTON, for the defendant in error, insisted, 1. Revis's was not a universal, but a general agency, viz : to transact all the business of his principal of a particular kind. [Paley on Ag. 199 ; Story on Ag. 18; 2 Kent's Com. 3d ed. 620–1 ; 15 East's Rep. 408.] 2. The power conferred upon the agent, authorized him to settle and collect the accounts, not to give them away, not to transfer them at pleasure to the creditors of the principal, and thus determine which of his creditors should be first paid. A factor or agent cannot pledge the property of his principal, unless, perhaps it be a negotia-

Wood v. McCain.

ble paper, the rightful possession of which *prima facie* may confer such a right. [2 Kent's Com. 626; 1 Mason's Rep. 440; 1 McC. Rep. 1; 2 Mass. Rep. 398; 7 East's Rep. 5; 1 M. & S. Rep. 140; Story on Ag. § 21.] 3. The agent had no authority to make the deed; the terms "general agent" and "agent generally," must be restrained to the business of the party, in respect to which, it is presumed, his intention to delegate the authority was principally directed. [Story on Ag. *supra.*]

COLLIER, C. J.—The precise language employed in the bill of exceptions, is this: "Stedman visited North Carolina and left Wm. A. Revis his general agent, or agent generally, (said Revis having no written authority,) to transact his business in this State; that he delivered up his books and accounts for medical services to said agent (including the account against garnishee) for settlement, and that said agency was advertised and generally known in the neighborhood."

It is supposed by the counsel for the plaintiff in error, that as Revis was the general agent of his principal, it must be presumed he was authorized to make the assignment in question. This conclusion is by no means a necessary sequence from the premises. General, are clearly distinguishable from universal agents, that is from such as may be appointed to do all the acts, which the principal can personally do, and which he may lawfully delegate the power to another to do. "Such an universal agency may potentially exist; but it must be of the very rarest occurrence. And, indeed it is difficult," says Mr. Justice Story, "to conceive of the existence of such an agency, inasmuch as it would be to make such an agent the complete master, not merely *dux facti,* but *dominus rerum,* the complete disposer of all the rights and property of the principal." Such an unusual authority will never be inferred from any general expressions, however broad, but the law will restrain them to the particular business of the party, in respect to which, it is presumed, his intention to delegate the authority was principally directed. Thus, if a merchant in view of his temporary absence, should delegate to an agent his full and entire authority to sell his personal property, to buy any property for him, or on his account, or to make any contracts,

or to do any other acts whatsoever, which he could do if personally present—these general terms would be limited to buying or selling, connected with his ordinary business as a merchant; and without some more specific designation, would not be construed, to apply to a sale of his household furniture, or library, or the utensils, provisions, and other necessaries used in his family. [Story's Ag. 20–1.]

The difference between a general and special agent, is said to be this: the former is appointed to act in the affairs of his principal generally, and the latter to act concerning some particular object. In the former case, the principal will be bound by the acts of his agent, *within the scope of the general authority conferred on him,* although those acts are violative of his private instructions and directions. In the latter case, if the agent exceeds the special authority conferred on him, the principal is not bound by his acts. [Id. 114; Paley on Ag. 199; 15 Johns. Rep. 44, 54.]

It is laid down, that an agent employed to buy, has no authority to sell, and *vice versa.* [Story's Ag. 81–2.] So an agency for the purpose of accepting or indorsing bills, or notes, does not authorize the agent to purchase or sell goods for his principal. [Id. 84.] And an authority to take a bond does not in itself embrace the power to receive the money due thereon, (Id. 88); nor has an agent, for the purpose of receiving a debt, the power, ordinarily, to receive it in any thing else than money, and then only when it is matured. [Id. 88–9.]

Where one is authorized generally to sign promissory notes for the debts of the principal, the authority cannot be implied to give notes to pay the debts of strangers; or to pledge the credit of the principal as a surety, for goods which were not bought for him, and which never came to his use. [Odiorne v. Maxey, 13 Mass. Rep. 181; Wallace v. The Branch Bank at Mobile; 1 Ala. Rep. 565.] In Rossiter v. Rossiter, 8 Wend. Rep. 494, it was held, that a power of attorney, to collect debts, to execute deeds of lands, to accomplish a complete adjustment of all the concerns of the constituent in a particular place, and to do all other acts which the constituent could do in person, does not authorize the giving of a note by the attorney in the name of the pricipal. *Further,* that the general words must be construed with reference to the matter special-

ly mentioned, and that the authority to make a complete adjustment, &c , did not authorize the giving of a note on the purchase of property. So it has been adjudged, that a power of attorney " to ask, demand, sue for, recover, and receive all such sum, or sums of money, debts, dues, accounts, and other demands whatsoever, which are, or shall be due, owing, payable, and belonging to us, or detained from us in any manner of ways or means, whatsoever, &c," does not authorize the attorney to compound for, receive and release, a sum of money which is not due and payable. [Heffernan v. Adams, 7 Watts' Rep. 716.]

In the case at bar, the general words are, " to transact his (the principal's) business in this State;" but as it respects the books and accounts for medical services rendered by Stedman, these words are restricted, by declaring, that they were delivered to the agent " for settlement." By this, we are to understand, that Revis was to collect, or it may be, otherwise settle these demands, with the persons from whom they were due. It would require a most unwarrantable extension of terms, to hold, that they conferred the power upon the agent, to assign the books, and accounts, to a surety of his constituent for his indemnity. The citations we have made upon this point are pertinent, and most satisfactorily show, that the assignment in question was not authorized by the power previously given.

The assignment might, perhaps, be further objected to, for the reason, that Revis himself was an agent, with the power to settle the accounts, and could not delegate his authority, or appoint a sub-agent without the assent of his principal. [2 Kent's Com. 4th ed.; 1 Livermore on Ag. 54, 64; Story on Ag. 17; 2 M. & S. Rep. 299; 9 Ves. Rep. 251.]

It is insisted, that the assignment to the plaintiff in error being approved by Stedman after his return to this country, became as effectual for all purposes, as if it had been made in virtue of a previous authority. Mr. Justice Story says, " Where the principal, upon a full knowledge of all the circumstances of the case, deliberately ratifies the acts, doings, or omissions of his agents, he will be bound thereby, as fully, to all intents and purposes, as if he had originally given him direct authority in the premises, to the extent, which such acts,

doings, or omissions reach." [Story on Ag. 234–5.] If there-
fore, a party assumes to act, not for himself, but for another,
without any authority, or the act exceeds the delegated author-
ity, the subsequent ratification of the principal is obligatory
upon him, whether the act be for his detriment or advantage.
[Id. 237 ; 2 Kent's Com. 4 ed. 614–5–6 ; 12 Mass. Rep. 60–3 ;
13 Id. 182 ; 4 Wend. Rep. 465–7.] But it is said, that if the
act of the agent be in the principal's name by an instrument
under seal, without authority, the ratification must be under
seal also. [Story on Ag. 237 ; 2 Greenl. Rep. 359 ; 12 Wend.
Rep. 525. See also 7 T. Rep. 209 ; 14 Sergt. & R. Rep. 331.]

Now although the general rule is, that the ratification relates
back to the time of the inception of the transaction, and has
a complete retroactive efficacy, or as the maxim is, *omnis
ratihabitio retrotiahitur*, yet this doctrine is not universally
applicable. Thus, if third persons acquire rights, after the act
is done and before it has received the sanction of the principal,
the ratification cannot operate retrospectively so as to overreach
and defeat those rights. If the law were otherwise, the *con-
stituent* would be invested with the power of preferring his
creditor in the present case, although his means of payment
had been seized by an attaching creditor. We have seen, that
the assignment in question, was inoperative, and ineffectual
for all purposes, until after the return of Stedman when he ap-
proved it. This act of approval was entirely voluntary, and
could not have been coerced. Previous to its ratification, the
plaintiff below acquired a lien upon the debt owing by the
garnishee, which could not have been defeated at the mere
volition of the defendant in the judgment. To show that the
ratification of an unauthorized act of an agent is thus limited
in its application, we need but refer to Story on Agency, 241
to 244 ; Paley on Agency, 345 to 347.

The view we have taken is decisive of the cause. We will
not stop to inquire, whether if Revis had authority to dispose
of the accounts of his principal to indemnify a surety of the
latter, an assignment (followed by a delivery of the accounts)
would be invalid, because it was executed under seal in virtue
of a parol authority. Without adding more, the result is that
the judgment must be affirmed.