## TAYLOR v. ROBINSON et al.

AUTHORITY to an agent, in general terms, to collect, or secure a claim of the principal, is not an authority to purchase for the principal the property of the debtor to secure the claim.  Such purchase is not the natural or usual means of securing the debt.

General words in an agency, must be construed in reference to matters specially mentioned.

Acts of an agent without authority, subsequently ratified by the principal, bind the principal back to the inception of the transaction.

But such ratification cannot defeat rights of third persons acquired between the act of the agent and the ratification by the principal—as attachments levied on property of a debtor after a sale by or to an agent.

APPEAL from the Sixth District.

On the trial, after plaintiff had rested, defendants moved for a nonsuit on the ground, among others, that Dunlap had no authority to receive the deed and bill of sale, mentioned in the opinion.   Motion overruled, defendants except.

The Court instructed the jury, that Dunlap had ample power, under the verbal authority from Taylor, to transact the business —as much so as if Taylor were present, and refused instructions asked by defendants, that there was no authority shown in Dunlap to receive the deed and bill of sale.   The jury found for plaintiff, judgment accordingly, and, motion for new trial being overruled, defendants appeal.

*Heydenfeldt*, for Appellants.

1. Dunlap's own testimony shows that his authority by parol was confined " to all acts necessary in and about the premises for the collection and securing the debts."

This power did not authorize the purchase of property for his principal.   (*Beardsley* v. *Root*, 11 Johns. 467; *Beals* v. *Allen*, 18 Id. 363; Dunlap's Paley's Agency, 178, and cases cited.)

2. Although the ratification of the plaintiff may be good to protect the agent from any liability to his principal, yet it is insufficient to defeat the intervening priorities of third persons. (*Wilson* v. *Turnman*, 6 Mann. & Gran. 236, and the cases there cited; *Beals* v. *Allen*, 18 Johns. 363.)

*P. L. Edwards*, for Respondent.

Taylor *v.* Robinson.

I.   The authority of the agent was ample.   To secure the debt, he was authorized to do any act which the principal in person might have done.   Restrictions upon his authority must be shown—are not to be presumed.

In the exercise of this authority the agent made the purchase of which the Appellant had due notice both from possession and otherwise, and all men are bound.   (Story on Agency, Secs. 97, 100, 147, 244, 251, *a;* Note 2; 1 Parsons on Cont. 40, 41, 44, 47, Note.)

Whether the authority was general or special, he was authorized to do all acts usually incidental or necessary to the doing of the principal act of his agency.

II.   The authority and act of the agent were capable of ratification.

There is a marked distinction between this case and that of *Wilson* v. *Turnman,* (6 M. & G. 236.)

There, the plaintiff in execution was sought to be made liable for the acts of the Sheriff's officers by virtue of an alleged subsequent ratification, in a case in which the officers had not pretended to act as agent of the former.

In that case the Court distinctly announced the rule : " An act done for another by a person not assuming to act for himself, but for such other person, though without any precedent authority whatsoever, becomes the act of the principal, if subsequently ratified by him," etc.

Here the agent did act for and in the name of the principal and under an authority either actual or assumed.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

Trespass against the Sheriff and Robinson for taking certain goods as the property of Johnson, defendant in process; of which goods the plaintiff alleges he was the owner in possession.

This case turns on the construction to be given to certain acts of one Dunlap and Johnson, Dunlap being the agent of the plaintiff.

Johnson was indebted to the plaintiff in a considerable sum of money.   Dunlap was his (plaintiff's) Attorney and agent.   He

was a witness on the trial, and testified as follows: "I loaned money to Johnson, for the plaintiff; Taylor gave me a verbal agency to do all acts necessary in and about the premises for the collection and securing of the debt; I acted in the exercise of that authority in taking the deed and bill of sale from Johnson to the plaintiff." It appears, further, that Taylor subsequently gave him a written power of attorney, which is found in the record, but it is unnecessary to consider it here, as the terms of it · evidently do not support the case of the plaintiff, if the authority of the verbal instructions and power was not sufficient to uphold his claim.

Some other testimony was given of this verbal agency, but it is no stronger, and is less specific than that of Dunlap just quoted.

The agent, Dunlap, took a bill of sale of this property, and other property, in liquidation of this indebtedness, as by a purchase of it; and, a few days afterward, the Sheriff, at the instance of Robinson, a creditor of Johnson, levied the process upon the personal property of Johnson, so sold to Taylor—the process issuing upon a debt existing before the alleged sale. After this levy, the plaintiff residing in St. Louis, Missouri, on being informed of the sale, ratified the acts of his agent, Dunlap, in the premises.

Two questions arise on this statement:

1. Whether Dunlap had original authority from Taylor to make this purchase?

2. Whether, if he had not, the subsequent ratification of the purchase by Taylor, had the effect to give validity to it as against the execution levy of Robinson?

1. Dunlap was not a general agent in the sense of the books. His agency, however extensive, was limited, it appears, to this particular transaction. It embraced the collection and security of this debt, and, as ancillary to this object, the usual means for effecting it. The question here is, was the purchase of this property, by payment or part payment of the debt of Taylor, within the power given the agent? It is laid down that an agent employed to ·buy, has no authority to sell, and *vice versa.* (Story on Agency, 81, 82.) So an agency for accepting or indorsing bills or notes, does not authorize the agent to purchase or sell goods for his principal. (Id. 84.) And an authority to take a

bond does not itself embrace the power to receive the money due thereon. (Id. 88.) Nor has an agent, for the purpose of receiving a debt, the power, ordinarily, to receive it in anything else than money, and then only when it is matured. (Id. 88, 89.) When one is authorized, generally, to sign promissory notes for his principal, the authority cannot be implied to give notes to pay the debts of strangers, or to pledge the credit of the principal as security for goods not bought for him. (13 Mass. 181.) And in *Rossiter* v. *Rossiter*, (8 Wend. 494,) it was held that a power of attorney to collect debts, to execute deeds of lands, to accomplish a complete adjustment of all the concerns of the constituent in a particular place, and to do all other acts which the constituent could do in person, does not authorize the Attorney to give a note in the name of the principal. It was there held, as the rule undoubtedly is, that the general words must be construed in reference to the matter specially mentioned, and that the authority to make complete adjustment did not authorize the giving of a note on the purchase of property.

So in *Hefferman* v. *Adams*, (7 Watts, 716,) it is held that a power of attorney to ask, demand, sue for, recover, and receive, all such sum or sums of money, debts, dues, accounts, and other demands whatsoever, which are or shall be due, owing, or payable, to us, or detained from us, in any manner whatever, does not authorize the Attorney to compound for, receive, and release, a sum of money which is not due and payable. These citations are sufficient to show that an authority to an agent, however general the terms, to collect or secure a claim of the principal, is not an authority to make a purchase for the principal of the property of the debtor for the security of the claim. To buy the property of the debtor, and thereby discharge the debt, is not the natural or usual means of securing its payment. An authority to this end must be supported by broader language than that here employed. We lay out of the case the fact stated by Dunlap, that, in the exercise of the authority, he bought the property; for, in the connection in which this language is used, we understand this statement to be no more than his construction of the power given him.

2. The view we have taken of this point is strongly supported by the case of *Wood* v. *McCain*, (7 Ala. 800,) which is also conclu-

sive of the second proposition, to wit: the effect of the ratifica-
tion by Taylor, of this purchase.   That case shows this state of
facts: that one Stedman, being about to leave the State, by a
verbal authority, made one Revis his Attorney, with general au-
thority to transact all his business for him in the State, and left
with the agent his books and accounts, for medical services, for
settlement.   Revis, as agent for Stedman, transferred the ac-
counts to one Wood, to secure Wood against his liability as surety
for Stedman.   A creditor of Stedman garnisheed a debtor of
Stedman, whose account, among others, had been transferred to
Wood.   After Stedman's return, he ratified and confirmed the
act of Revis in his transfer.   The question was as to the validity
of the transfer as against the attachment.

The Court held, that it was invalid, both for want of original
authority, and because the ratification could not retroact so as
to affect the attachment.

The following extract, from the opinion of the Court, places
the subject in a clear light:  " It is insisted, that the assignment
to the plaintiff in error being approved by Stedman, after his
return to this country, became as effectual for all purposes as
if it had been made in virtue of a previous authority.   Mr. Jus-
tice Story says: ' When the principal, upon a full knowledge of
all the circumstances of the case, deliberately ratifies the acts,
doings, or omissions, of his agents, he will be bound thereby, as
fully, to all intents and purposes, as if he had originally given
him direct authority in the premises, to the extent which such
acts, doings, or omissions, reach.'   (Story on Ag. 234, 235.)   If,
therefore, a party assumes to act, not for himself, but for another,
without any authority, or the act exceeds the delegated author-
ity, the subsequent ratification of the principal is obligatory upon
him, whether the act be for his detriment or advantage.   (Id.
237; 2 Kent's Com. 4th Ed. 614—616; 12 Mass. 60—63; 13 Id.
182; 4 Wend. 465—467.)   But it is said, that if the act of the
agent be in the principal's name, by an instrument under seal,
without authority, the ratification must be under seal also.
(Story on Ag. 237; 2 Greenl. 359; 12 Wend. 525.   See, also, 7
Term, 209; 14 Sergt. and R. 331.)

Now, although the general rule is, that the ratification relates
back to the time of the inception of the transaction, and has a

Taylor *v.* Robinson.

complete retroactive efficacy, or as the maxim is—*Omnis ratiha-bitio retrotrahitur*—yet, this doctrine is not universally applicable. Thus, if third persons acquire rights, after the act is done and before it has received the sanction of the principal, the ratification cannot operate retrospectively, so as to overreach and defeat those rights. If the law were otherwise, the constituent would be invested with the power of preferring his creditor, in the present case, although his means of payment had been seized by an attaching creditor. We have seen that the assignment in question, was inoperative, and ineffectual for all purposes until after the return of Stedman when he approved it. This act of approval was entirely voluntary, and could not have been coerced. Previous to its ratification, the plaintiff below acquired a lien upon the debt owing by the garnishee, which could not have been defeated at the mere volition of the defendant in the judgment. To show that this ratification of an unauthorized act of an agent is thus limited in its application, we need but refer to Story on Agency, 241—244; Paley on Agency, 345—347."

It is scarcely necessary to add anything to this reasoning, supported as it is by such authority. But it may be remarked, that if we were to hold, that an act originally invalid, by subsequent acquiescence of the principal is validated in such a case, it would follow, that all a party in failing circumstances need do to keep off his creditors, would be to select some creditor in the Atlantic States, and transfer his property to him, with the effect, if the creditor accepted, to put a stop to any coercive process to enforce collection of the home debt; or, possibly, if no debt were due, yet, if the principle of ratification is acknowledged, as contended for, to make a bargain valid, which at the time of the levy had no existence.. We think the doctrine cannot be maintained.

It is not necessary to consider any other points. The result is, that the judgment must be reversed, and cause remanded, that it may be retried upon the principles of this opinion.