Ashburn, J.
The plaintiff was a citizen of Maryland, and defendant a citizen of Ohio. The amount claimed in the petition exceeded five hundred dollars. These facts gave the plaintiff, on filing a petition for that purpose, and giving an undertaking as required by the act of congress of March 2,1867, a legal standing to have his cause of action tiansferred to a federal court.
*518 The question now is, did plaintiff abandon his right to removal, and submit his action to the jurisdiction of the state court for final adjudication ?
We think he did. We think this is made manifest by his conduct in reference to the case, as shown by the record.
The original cause of action was one over which the court of common pleas had jurisdiction. By voluntarily selecting the state court as the forum in which to bring his action, he submitted his person and cause of action to that jurisdiction.
When the state court ruled adversely upon his application for removal, he had then a right, under the provisions of the act of congress of 1887, as settled by numerous state and federal decisions, to perfect the transfer by filing “ copies of all process, pleadings,” etc., in the proper federal court, on the first day of the next session thereof. This was not done. Without inquiring here as to the legal necessity of his taking that step to perfect the transfer, we think such omission a proper fact to be considered, as tending to show a waiver of his right and evincive of his purpose to abide by and in state jurisdiction.
To the adverse ruling of the state court on the motion to remove, plaintiff caused an exception to be noted on the journal, and after that, so far as we are advised by the record, submitted uncomplainingly to a final trial in the state court.
After the judgment of nonsuit in the court of common pleas, he filed and prosecuted to final judgment a petition in error, in the State District Court. In that proceeding he did not complain that the court of common.pleas had erred in refusing to allow a removal of his cause into the United States Court. He assigned no error grounded on the jurisdictional judgment of the court. His only grievance alleged was that the state court had erred in granting a nonsuit. It is a fair legal presumption, to be drawn from his silence in that respect, that he was acquiescing in the jurisdiction of the state court. Indeed, we think his second voluntary submission, by his own affirmative action, to the jurisdiction *519 of a state court shows an abandonment of his right to removal.
lie had an undoubted personal right, in the first instance, to select a jurisdiction in which to bring his action. Ills right, on taking the proper- steps, to have his action transferred from state to federal jurisdiction was equally a personal privilege, which he might assert or abandon at his pleasure. Having made his selection, we do not feel warranted in saying it was error for him not to have chosen otherwise.
Having failed to obtain a reversal of the judgment of the court of common pleas in the district court, he afterward prosecuted in that court, what may be called a second petition in error, in which the only errors assigned amounted to this, that the court of common pleas had erred in dismissing his petition for removal, and in assuming jurisdiction of the action after he had filed his petition to remove. The second assignments of error, and the causes for error assigned against the judgment of nonsuit in his first petition in error, are all assigned for error in this court. As already stated, neither of the causes for error assigned in the second petition in error were assigned in the first.' Eor this and other reasons already indicated, we think plaintiff voluntarily assented to the jurisdiction of the state court, and abandoned his right of removal.
The errors assigned in the second petition in error, and not assigned in the first, bat brought into the petition in error in this court, will be dropped out, aud, because improperly assigned here, they will be treated as though not assigned.
It is well settled by authority, and is a doctrine sound in principle, that all questions which existed on the record, and could have been considered on the first petition in error, must ever afterward be treated as settled by the first adjudication of the reviewing court.
The time should come, in the history of a cause, when litigation must end. If the failing party was allowed to prosecute a new petition in error, on the same record, whenever he imagined he had discovered a new ground of *520 error not previously assigned, litigation would be interminable. Such a practice would violate well-settled principles of law and be against public policy. Evans v. St. John, 9 Porter, 186; Zimmerman v. Turner et al., 24 Wis. 483; Lallard v. Lallard, 5 B. Mon. 340; Headley et al. v. Challiss, 15 Kans. 602; Erring v. McNairy et al, 20 Ohio St. 315; Peirce v. Eneeland et al., 9 Wis. 23.
While I fully agree with those of my brethren who concur in this ruling, I would prefer to put the ruling on another ground. The act of congress, approved March 2, 1867, provides that the party entitled to a removal shall file his petition for removal, and “ offer good and sufficient surety for Ms entering in such court, on the first day of its session, copies of all process, pleadings, depositions, testimony, and other proceedings in said suit, . . . and the said copies being entered, as aforesaid, in such court of the United States, the suit shall then proceed in the same manner as if it had beeu brought there by original process:” 14 U. Stat. at Large, 558-9.
I think this portion of the statute means something. The federal court obtains actual jurisdiction only when copies of the process, etc., are filed in that court. The statute imposes the duty of filing the jurisdictional papers in the federal court upon the petitioner. Not only must he file the proper papers in the federal court, but he must, in order to complete the transfer, file them there by a given time, viz., on the first day of the next session. The copies of process, etc., required to be filed in the federal court, are the process — corresponding to a summons — by which the jurisdiction is there made active. If a summons, in an action, is not served and returned into court, as required by law, jurisdiction for trial purposes is not obtained by the court. . If, in an appeal case, a transcript is not filed in the appellate court, or not filed within the time required hy statute, appellate jurisdiction can not attach. This for the reason that the transcript from the inferior court is the process by which the appellate court acquires jurisdiction. The act of" 1867 says, “ And the said copies being en *521 tered, as aforesaid, in said court of the United States, the court shall then proceed,” etc. The federal court can not proceed until the process (copies) are entered in that court. Entering the copies is essential to jurisdiction, because the equivalent of a summons. Until the required copies are entered in the federal court jurisdiction remains in the state court. It must be somewhere, and as it is not transferred to the federal court, it must be of necessity in the state court. Besides, the transfer of a case is a personal privilege that a party may waive. In my opinion, when he fails to comply with the plain jurisdictional requirements of the statute, he will be deemed to have waived his right of transfer.
In Insurance Co. v. Morse, 20 Wall. 445, Hunt, J., who delivered the opinion of a majority of the court, said: “ In a civil case he may submit his particular suit, by his own consent, to an arbitration or to the decision of a single judge; so he may omit to exercise his right to remove his suit to a federal tribunal as often as he thinks fit, in each recurring case. In these respects, any citizen may, no doubt, waive the right to which he may be entitled.”
II. Did the court err in ordering a nonsuit ?
The answer to this question depends upon the determination of two questions.
1. Whether Schloss had authority from plaintiff to make the purchase.
2. If he had not, did the subsequent ratification of the purchase, by plaintiff, have the effect to give validity to the transaction as against the attachment levy of defendant upon the goods made prior to the ratification?
The agency and authority of Schloss were conferred by a power of attorney, as follows:
“ Know all men by these presents : That I, Moses Pollock, of the city of Baltimore, in the State of Maryland, for divers good causes and considerations, me hereunto moving, have made, ordained, authorized, nominated, constituted and appointed, and. by these presents do make, ordain, authorize, nominate, constitute, and appoint Joseph *522 A. Schloss, of Baltimore city, my true and lawful attorney, for me, and in my name, place, and stead to act for me, as my agent, to collect, a bill due me from Rudolph Bornstien, of Pomeroy, Ohio, and to receive notes, or to execute bill of sale, mortgage, or any way to settle the above bill, the total amount being $1,948.50, and to do all other lawful acts and things whatsoever concerning the premises, as fully and in every respect as I myself might or could do were I personally present at the doing thereof, and attorneys, one or more, under him, for the purposes aforesaid, to make, and again, at his pleasure, to revoke; hereby ratifying, allowing and confirming whatsoever my said attorney shall, in my name, lawfully do, or cause to be done, in and about the premises, by virtue of these presents.
“ In witness whereof, I have hereunto set my hand and seal, this 24th day May, a. d. 1867.
[seal] “ MOSES POLLOCK.”
The question on this instrument, in view of the action of the court below, is, was the authority conferred upon the agent general or special. The instrument conferring the authority is in writing, under seal, and contemplates the execution of a single act in Pomeroy, Ohio. The agent’s authority must be determined by the terms of the writing, and the nature of the business to be transacted, to be affected by any local usage or trade custom relating to such transactions at the place where the authority of the agent was to be exercised, should there be any such usage or custom. In this case no special ugagé or custom was shown to exist, that could in any way vary the terms of the written authority.
We think the agency of Schloss was special. He was authorized to collect a particular debt, amounting to $1,-948.50. The writing designated the-modes of collection to be executed, by receiving notes, bill of sale, or by mortgage. The general words, “ or any way to settle the above bill,” by the authorities on such questions, will be restricted in effect to mean authority to_ make settlement of the claim in any of the modes named in the instrument, and to the *523 using of such other instrumentalities as the agent might find necessary to effect the collection in one of the ways specified, including, of course, a cash payment to him. Billings v. Morrow, 7 Cal. 171.
It is clear to us the authority conferred did not contemplate the purchase of a large stock of miscellaneous merchandise — the creation of a large debt against the principal; that the agent should execute his authority in such manner as to necessitate a loan of money to his principal, and thereby creating a debt against the constituent greater than the claim to be collected. “An agent having authority only to collect a debt, has no right to take a note for the amount of it from the debtor to himself, and thus substitute himself as creditor.” McCulloch v. McKee, 16 Penn. St. 289. In Powell’s Adm’r v. Henry, 27 Ala. 612, it was held: “ The delivery of an account to an agent, for the purpose of collecting it, confers no authority to settle it in any other mode; and if the agent exceeds his authority, although the principal may ratify the act, yet, to avoid it, he is -not obliged to give notice that he repudiates it.”
As Schloss had no authority to make the purchase, his doing so did not change the relation of creditor and debtor as between. Pollock and Bornstien. This is a necessary consequence of the rule, with few exceptions, that the authority conferred on the agent must be strictly pursued by him, or his acts are unauthorized, and therefore not binding upon his principal. White v. Cooper, 3 Penn. St. 130; Mathews v. Hamilton, 23 Ill. 470; Dunlap’s Paley’s Agency, 178.
The non binding effect of unauthorized acts of an agent, as between principal and agent, is considered and clearly declared in Rossetter v. Possetter, 8 Wend. 494, and also, in Taylor v. Robinson, 14 Cal. 396. It was substantially held that authority to an agent, in general terms, to collect or secure a claim of the principal, is not an 'authority to purchase for the principal the property of the debtor, to secure the claim. Such purchase is not the natural or usual *524 means of seeming a debt. And general words in the power, must be construed in reference fo matters or modes specially mentioned. Had a purchase of the property of the debtor been contemplated by the principal, the transaction of the agent would not have needed to be ratified by the principal, he would have been bound without any such act. See also, Nixon v. Hyesot, 5 Johns, 58; Hoffman v. Adams, 7 Watts, 116.
These authorities, and there are many more of the same general effect, warrant us in holding that the authority conferred on Schloss, was special, that in making a purchase of the property, and creating an apparent indebtedness against his principal, he exceeded his authority — that the indebtedness created was his own rather than that of his principal — that by the purchase of the goods, title to them did not pass to the plaintiff’.
Plaintiff’ claims the case of Oliver v. Sterling & Ahrens, 20 Ohio St. 391, is in point, and decisive of this case. We think the eases are clearly distinguishable. The authority of the agent in that case, consisted of verbal instructions coupled with a letter addressed to the debtor. On the trial parol testimony was admitted to show the nature and extent of the agent’s authority, which, with the letter, was allowed to go to the jury. Upon the facts of that case there could be no legal objection to such a course. Story on Agency (7 ed.), § 82, says: “It may be laid down as a general rule, that where an express authority is conferred by informal instruments, such as letters of advice, or instructions, or loosely drawn orders, especially where they are general in their terms or confer a general authority, they are construed with more liberality than more formal and deliberate instruments.” In such case parol evidence may be used to show the full and particular instructions. Otherwise, “ where the agency is created and conferred by a written instrument, the nature and extent of the authority must be ascertained by the instrument itself, and can not be enlarged by parol evidence of intention to confer additional power; for this would be to contradict or to *525 vary the terms of the written instrument.” Story on Agency, (7 ed.), § 76. See also, 1 Taunt. §§ 62, 63, p. 346.
In this case the power of the agent, as to the performance of his agency in Pomeroy, was wholly and exclusively conferred by the power of attorney. ITis authority could not be controled or varied by parol testimony. As it was conferred in writing, all questions under it, as to the agent’s authority, must be referred to the court-for determination. Hence, when the motion for non-suit was made, a material question for determination by the court was, the authority of the agent to make the purchase. That being determined adversely to the plaintiff, as we think properly, the plaintiff had no title to the property aud a non-suit was properly granted.
This would determine the case, but it is claimed the subsequent ratification of the acts of Schloss, by Pollock, had the effect to perfect the title in plaintiff.
The rule is, where an agent, in the transaction of the business, has exceeded his authority, and his principal, with a full knowledge of the-circumstances, deliberately ratifies the unauthorized acts of his agent, the ratification reaches back to the inception of the unauthorized acts, and the prihcipal is bound thereby. •
There are exceptions to this rule. If an innocent third person acquires rights, in good faith, in the property, after the commission of the unauthorized act, and before it has been sanctioned by the principal, the ratification will not operate retrospectively so as to defeat such intervening rights. 'Wharton on Agency and Agents, § 77, says: “But innocent strangers, with intervening vested rights, are not so precluded. These rights, so far as they accrued prior to his ratification, the principal can not touch ; so far as they are concerned, the ratification is utterly without effect.” The same doctriue is found in Story and Paley on Agency. Taylor v. Robinson, 14 Cal. 396; Wood v. McCain, 7 Ala. 800; Fiske et al. v. Holmes et al., 41 Maine, 441; Parmlee v. Simpson, 5 Wall. 81.
In this case, by the testimony, Schloss made the alleged *526 purchase about the 27th of May, 1867. Cohen caused his attachment to be levied upon the goods about the 24th of June, 1867, and the attempted ratification did not take place earlier than July 5, 1867. So far as we can learn from the testimony, Cohen was creditor of R. Bornstien prior to the alleged purchase. By the levy of his attachment on the goods, before the ratification of the agent’s unauthorized purchase, he acquired a valid claim to and lien upon the attached goods, which Pollock’s ratification could in no way divest.
The court of common pleas did not err in entering up a judgment of nonsuit against the plaintiff.

Judgment affirmed.