CONSOLIDATED FRUIT JAR CO. *v.* BELLAIRE STAMPING CO.

*(Circuit Court, S. D. Ohio, E. D.*    April 13, 1886.)

1. PATENTS FOR INVENTIONS—ABANDONMENT.

The patent granted to William Taylor and Charles Hodgetts, No. 117,236, dated July 18, 1871, for improvement in caps for preserve jars, is invalid and void.

2. SAME—RENEWING APPLICATION—AUTHORITY—ASSIGNMENT.

Taylor & Hodgetts filed their application March 26, 1856. It was rejected, on references, April 16, 1856, and withdrawn April 22, 1856. On March 30, 1869, a patent was granted to Boyd for substantially the same invention. On January 7, 1871, Cozzens, the attorney of Boyd, filed a request in the name of Taylor & Hodgetts, but without their authority, to renew the application under the provisions of section 35 of the patent act of July 8, 1870. In June, 1871, Boyd purchased Taylor & Hodgetts' rights in the invention and application, and obtained from them a ratification of Cozzens' attempted renewal, after which he paid the renewal fee, filed an amended specification, and had the patent issued. Taylor & Hodgetts made no effort to renew or prosecute the application between their withdrawal on April 22, 1856, and the filing of the renewed application in 1871. There was evidence that they had given up the invention, and ceased to use it, or take any further interest in it, as early as about 1862; and that they were men of means, engaged in the business of manufacturing fruit cans. *Held,* (1) that they had abandoned the invention; (2) that the renewal was without authority, and that its subsequent ratification could not validate it; (3) that their abandonment was not in favor of Boyd, the intervening patentee, but in favor of the public; (4) that Boyd could not, by acquiring an assignment from them, reclaim the invention from the public.

3. SAME—LAPSE OF TIME.

Where an application for a patent has been filed and withdrawn, lapse of time, whether it be alone conclusive of abandonment or not, is nevertheless a fact which may give great point and force to testimony disclosing what was done in the interval.

4. SAME—INTEREST OF PUBLIC—ESTOPPEL.

In cases of abandonment or reissue, under the patent laws, the matter is not to be likened to chattels personal, the ownership of which may be abandoned and afterwards resumed; for there is always, in patent cases, a public equity which must not be disregarded. In such cases the equitable estoppel which arises, where other rights in the mean time intervene, is not in favor of the intervenor alone, but he is regarded by the courts as the representative of the public, and therefore whatever rights he gains the public gains

*Causten Brown, William C. Witter, William H. Kenyon,* and *A. C. Gurlitz,* for complainant.

*George W. Dyer* and *Lysander Hill*, for defendant.

SAGE, J. This suit is to restrain the infringement of two patents, the property of the complainant: (1) Taylor & Hodgetts' patent for an improvement in caps for preserve jars, No. 117,236, dated July 18, 1871. (2) Reissued patent No. 9,909, for means for preventing corrosion of metallic caps, issued October 25, 1881, to the complainant, assignee of Lewis R. Boyd, deceased, to whom the original patent (No. 88,439) was issued March 30, 1869, for improved mode of preventing corrosion in metallic caps.

Taylor & Hodgetts' original application for their patent was made March 26, 1856. It was rejected, on reference, April 16, 1856. April 22, 1856, Taylor & Hodgetts withdrew it, and requested a return of $20, as then provided by statute in such cases, and about May 1, 1856, the money was returned to them.

The statute of July 8, 1870, (section 35,) provides for the renewal of rejected or withdrawn applications by a renewed or new application, if made within six months, which period expired January 7, 1871. On that day S. D. Cozzens, signing as attorney for Taylor & Hodgetts, but, as I find from the testimony, without authority, filed a petition that they might be allowed to renew their said application in accordance with the act of July 8, 1870, upon paying into the treasury the sum of $15, as in the case of a new or original application. On the fourteenth of January, 1871, Cozzens was notified by the commissioner of patents that as he had no recorded power of attorney, as required by the regulations of the patent-office, authorized by the act of July 8, 1870, the paper above referred to, filed January 7, 1871, and signed by him, could not be accepted as a valid renewal of Taylor & Hodgetts' application. On the thirtieth day of June, 1871, Cozzens procured from Taylor & Hodgetts a full power of attorney in writing to renew said application. The first paragraph of this power is a recognition of what he had previously done. The language is significant in its bearing upon the question whether any authority whatever had been previously given him. It is as follows:

"Whereas, on the seventh day of January, 1871, a certain paper for the purpose of renewing, under the patent act approved July 8, 1870, our application for letters patent for an improvement in preserve cans, filed March 26, 1856, and withdrawn May 1, 1856, was duly filed in the patent-office by S. D. Cozzens, Esq., of the city of New York, as our attorney, and was by him subscribed as our attorney, as he rightfully might do."

In the body of the power there is an express ratification of Cozzens' action in signing and filing the petition for leave to renew the application.

It is convenient now to consider what Taylor & Hodgetts did with reference to their claim for the invention described in their original application, after its rejection and their withdrawal of it. They were tinsmiths. The copartnership was in existence from about 1855 un-

til the death of Taylor, in April, 1874. They were for several years, dating from about 1855, largely engaged in the manufacture of fruit cans at Williamsburg, New York. Hodgetts' testimony, taken in 1875, in a cause then pending in the Northern district of Illinois, is, by stipulation, a part of the record of this cause. From his deposition it appears that they were in very good pecuniary circumstances between the years 1860 and 1870. They continued in business as partners as above, at Williamsburg, until Taylor's death. In 1855 they manufactured and sold, in large numbers, a fruit-jar cap identical in material and form with that described in their application of 1856, excepting that it was unlined. They also manufactured and sold a fruit-jar cap differing from that described in their application only in that there was no soft metal cover to what is described as the "lining" in their application. Whether they manufactured and sold caps such as are described in their original application is not clear. There are some expressions which indicate that they did, but Hodgett's testimony on this point is unsatisfactory. He was evidently an ignorant man. His testimony was given nearly 15 years after they discontinued the manufacture, and his memory as to dates and as to details was defective.

John H. Goodale, who was in the employment of Taylor & Hodgetts at the time, and in charge of that department of their business, testifies that they sold caps of all the varieties above referred to, including that described in their first application, for about three years, dating from 1856 or 1857; but he refers particularly to the two kinds not described in the application, and his only testimony including the cap described is an affirmative answer to a question whether Taylor & Hodgetts sold caps of all these three varieties. His deposition, which is in the record by stipulation, was taken in 1878 in the cause in the Northern district of Illinois.

Two witnesses, Renshaw and Jones, who were in the employ of Taylor & Hodgetts, made affidavit that caps like those described in the original application were made and sold at the dates above referred to by Taylor & Hodgetts, but subsequently each made an affidavit that he was in error, and that no such caps were made or sold. All these affidavits are in the record by stipulation. Taken altogether, the testimony on this point is so contradictory, vague, and unsatisfactory that it is not sufficient to warrant the conclusion that the caps described in the original application were ever manufactured and sold by Taylor & Hodgetts.

Mr. Hodgetts was examined fully in reference to the abandonment of the invention described in the Taylor & Hodgetts' application of 1856. As above stated, he testified that his firm commenced the manufacture of caps a little before 1857, and continued about three years. He was asked what they did about the invention after those years. His answer is that they abandoned it; and he goes on to say that after that time they made no efforts to get a patent for it, because they thought it was not worth it; that between 1860 and 1870

the pecuniary circumstances of his partner and himself were very good, but that in all that time they had no idea of getting a patent, and the subject was not even talked about.   He further testifies that they discontinued the manufacture and sale of caps and jars in 1862, because the improvements that were introduced "shut off that line of business;" and "that the thing became so worthless to us that we never thought about it."   On cross-examination, when asked what he meant by his testimony in his direct examination that he abandoned the invention, his answer was that he gave it up,—that they stopped making them.   Finally, he says, that about three years before the date of his testimony his partner informed him that he had an offer of $100 for their claim to the invention.   This offer was from some person who was "after the claim," but who he was the witness did not know.   Both he and his partner were willing to accept the offer, and the sale was made.   The witness received $50, and supposed that his partner received a like sum.   The purchaser was Cozzens, who, on the same day, received the power of attorney hereinbefore referred to.

To the respondent's contention that by this testimony an abandonment of the invention is established, complainant urges—*First*, that Hodgetts' testimony is not reliable because of his ignorance and forgetfulness; that he is confused about dates and details; that he testifies that he does not remember anything about the original application for the patent; and that, taken altogether, his testimony is so vague and uncertain that it should be discarded.   That is not my view.   On the contrary, these very characteristics add strength to his testimony that they gave up the idea of pressing an application for a patent, and abandoned the invention as worthless.   No man is likely to forget facts in which he has a constant and lively interest. Very few men remember, for any great length of time, facts to which they are indifferent; and Hodgetts' inability, after the lapse of nearly 15 years from the date of their last manufacture, and 20 years after the rejected application, to recall details or dates with accuracy is not at all surprising, if it be true, as he testifies, that he and his partner abandoned the invention, and threw it aside as worthless. No one can read Hodgetts' testimony without being impressed that it was honestly and truthfully given.   He had no interest in the result of the litigation.   He and his partner had sold whatever claim they had for a mere trifle, and that fact strongly re-enforces his testimony that they had abandoned the invention, as does the further fact that it does not clearly appear that after the rejection of their application they ever manufactured or sold a single cap such as that which they had sought to have patented.   What more significant and conclusive proof of the truth of his testimony that the thing became so worthless to them that they never even thought of it?

Next, it is insisted that even if it be true that they dismissed the idea of obtaining a patent, and, even for so long a period as 15 years, regarded as worthless what they described in their application, there

was no abandonment, for the reason that in the proper construction of the thirty-fifth section of the act of July 8, 1870, mere lapse of time is not sufficient to establish an abandonment.    Grant it for the sake of the argument.    The answer is, first, that lapse of time is nevertheless a fact which may give great point and force to testimony disclosing what was being done in the interval.    Here were men largely engaged in manufacturing fruit cans and caps, and it is incredible that they would, at such a time and under such circumstances, utterly neglect either to press for a patent or engage in the manufacture and sale of what they regarded an improvement over the other caps they were manufacturing and selling; and when they allowed 15 years to slip by, and did nothing, and then, cans having in the mean time been largely superseded by glass jars, and their style of cap practically out of date, to such an extent that there is no evidence that a single cap made according to the Taylor & Hodgetts' claim has ever since been made and put upon the market, the lapse of time makes conclusive the fact of abandonment, not merely of the application, as was argued, but also of the invention.

Again, it is said that abandonment is a renunciation of ownership, and that if thereupon the property pass into the possession of others, the ownership is gone forever; but that where the abandonment is to oblivion or neglect, the ownership may be reasserted after any lapse of time.

The owner of property may abandon it on a desert, and, turning back, retake it into his possession, and it will be his again.    Even in that case, it was not his after he threw it away until he retook it, and yet he could make it his by retaking it, and then his title was as good as ever.    But we are not dealing with that kind of property.    The patent laws protect the exclusive right of an inventor; but the great object of those laws is to benefit the public by stimulating invention, which it is the theory of the law can be best accomplished by securing to the inventor, for a limited time, under enacted conditions, an exclusive right to the manufacture, use, and sale of his invention, thereafter to be forever free to the public.    Hence, in a case of abandonment or reissue, the matter is not to be likened to rights to chattels personal, for in reference to patents there is always a public equity which must not be disregarded.    But for this public equity, in a case of reissue broadening the claim within the limits of the invention, the rights of an intervenor, who had in the mean time appropriated what had been inadvertently or by mistake or accident omitted from the claim, might be saved by granting the reissue, subject to a license to the intervenor; but applying the public equity, the court must regard the intervenor as the representative of the public, and therefore whatever rights he gains the public gains.    So in abandonment.    If it appears that the inventor, after perfecting his invention and applying for a patent, and thereby irretrievably committing himself to the proposition that his invention is ripe for introduction to the public, ac-

cept the decision rejecting his application, and cast aside his invention as of no longer any value to him, he thereby makes it forever public property, and it is not in his power to take it back and make it again his own.

In *Consolidated Fruit Jar Co.* v. *Wright*, 94 U. S. 92, and in *Planing-machine Co.* v. *Keith*, 101 U. S. 479, there is abundant authority for holding that, upon the facts disclosed in this record, Taylor & Hodgetts abandoned their invention before the renewal of their application; and the holding of this court is that the patent issued to them is therefore invalid. I do not deem it necessary to refer particularly to the rulings made in the circuit court of New Jersey, and in the Western district of Pennsylvania, in the cases cited sustaining the Taylor & Hodgetts patent. Those rulings were on motions for ·preliminary injunctions, and the judges who pronounced them would have decided upon final hearing, as I do, entirely independently of them, for obvious reasons.

There is another view to be taken. It is clear to my mind, from the testimony, that Cozzens, in presenting the renewed application for the Taylor & Hodgetts patent, on the very last day of the time limited by the act of July 8, 1870, acted without authority. The language of the power of attorney subsequently obtained by him strongly implies this, and all the circumstances confirm it. This subsequent ratification, of date six months after the limit of time within which the new application could, under the law, be made, did not, and could not, divest vested rights intermediately accrued. The rights of Boyd under his patent of March 30, 1869, and the rights of the public, had then accrued, and they were vested rights. In *Mann* v. *Walters*, 10 Barn. & C. 626, Bagley, Littledale, and Parke held that where a notice to quit is given by an agent of a landlord, the agent ought to have authority to give it when it begins to operate, and that a subsequent recognition of the authority of the agent will not make the notice good. A similar ruling was made by Lord Denman in *Eysster* v. *Goldwin*, 2 Q. B. 143; and in *Stoddard* v. *U. S.*, 4 Ct. Cl. 511, it was held that ratification after capture, of purchases of cotton by an agent in an insurrectionary state, during the rebellion, comes too late, and that the law does not admit of a ratification which will defeat the intervening rights of third parties, and that it does not matter whether the third party is an individual, a corporation, or the government of the United States. In *Wood* v. *McCain*, 7 Ala. 800, Collier, C. J., states the rule as follows:

"Now, although the general rule of law is that the ratification relates back to the inception of the transaction, and has a complete retroactive efficacy, or, as the maxim is, *omnis ratihabitio retro trahitur*, yet this doctrine is not universally applicable. Thus, if third persons acquire rights after the act is done, and before it has received the sanction of the principal, the ratification cannot operate retrospectively so as to overreach and defeat those rights."

This rule was recognized in *Cook* v. *Tullis*, 18 Wall. 332, and it is directly applicable here.

It follows that the renewed application of Taylor & Hodgetts was not made in time, and that their subsequent ratification of Cozzens' unauthorized appearance did not relate back to the date of that appearance. This disposes of the Taylor & Hodgetts patent.

The Boyd patent, reissued to the complainants, dates from March 30, 1869. In the pressure of other business since the close of the argument in this cause, a week ago, I have not been able to examine fully the questions necessary to a decision. I shall therefore postpone my decision as to that patent until the opening of the June term of the Eastern division, at Columbus, where this cause is pending, and where the final decree will be entered. But that patent expired at the close of the twenty-ninth of March, 1886, and is no longer in force.

The restraining order hereinbefore granted is removed, and no further order will now be made.