## MAYER ET AL. *v.* H. BERNSTEIN ET AL.

1. ASSIGNMENT FOR CREDITORS. *Power of partner.*
   In the absence of exceptional circumstances, one partner, without the consent of his copartner, cannot make a general assignment of the firm effects for the benefit of creditors.

2. SAME. *Assignment by one partner. Burden of proof.*
   A general assignment of the firm property executed by one partner is *prima facie* invalid, and the burden of proof to show consent of the other partner rests upon those who would maintain it.

3. SAME. *Ratification. Intervening liens. Rights of creditors.*
   Where one, without the consent of his copartner, makes a general assignment of the firm assets, and creditors assail it, subsequent ratification by the non-executing partner will not affect their liens.

FROM the chancery court of Lauderdale county.
HON. SYLVANUS EVANS, Chancellor.

The facts are sufficiently stated in the opinion.

*McIntosh & Williams,* for appellants.

The allegation mainly relied upon by complainants is that the assignment was made by one partner without consent of the other. This allegation is denied, and is not proved by a single witness. On the contrary, it is shown by the testimony of both Mayer and Morris that the latter had sole charge of the business, and had authority to execute the assignment with preferences if in his opinion it was deemed proper. The letter introduced in evidence shows that Morris wrote Mayer of his purpose to execute the assignment and that Mayer promptly replied acquiescing. It was also shown by the testimony of C. W. Robinson that on the day the assignment was executed, or the next day, Morris received a telegram from Mayer ratifying what had been done.

Subsequent consent to an assignment by one of the partners for the benefit of creditors renders it valid. Bates on Partnership, § 339; *Hewes* v. *Parkman,* 20 Pick., 90; *Welles* v. *March,* 30 N. Y., 347; *Adee* v. *Cornell,* 93 *Ib.,* 572; *Hooper* v. *Baillie,* 23 N. E. Rep., 569; *Klump* v. *Gardner,* 21 *Ib.,* 99; *Williams* v. *Frost,* 6 N. W. Rep., 793; *Coleman* v. *Rosenfield,* 28 *Ib.,* 369; *Brooks* v. *Sullivan,* 32 Wis., 444; *Holland* v. *Drake,* 29 Ohio, 441; *McNutt* v. *Strayhorn,* 39 Pa., 269.

*Houston & Woods,* for appellees,

Filed a lengthy brief without citation of authority, discussing the facts of the case and contending that the assignment was not executed by authority of both partners, and that it was fraudulent and void.

*Witherspoon & Witherspoon,* on the same side,

Also filed a lengthy brief discussing the facts.

On the point that one partner, without the consent of the other, cannot assign the partnership effects, counsel cited the following authorities: 1 Lindley on Partnership, p. 129, and

note; *Ib.*, p. 279; 1 Bates on Partnership, § 338 *et seq.*; 5 Paige, 30.

This case is distinguishable from that of *Williams* v. *Frost*, 6 N. W. R., 793, relied on by counsel for appellant. In that case the absent partner was in Holland, and, besides, he had given his partner authority to do the best he could with the assets. Here the absent partner, Mayer, was in Texas, and could easily be communicated with. On this point see 36 N. Y., 671; Burrill on Assignments, 5th Ed., pp. 9, 544.

COOPER, J., delivered the opinion of the court.

In the absence of exceptional circumstances, it is not within the power of one partner to make a general assignment of the partnership effects for the benefit of creditors without the consent of the other partner.

No exceptional circumstances are shown to have existed in this case from which such power could be inferred. Mayer, the non-executing partner, though in another state, was at a point at which he might easily have been communicated with by letter or telegram, and no exigency is shown to have existed to warrant the execution of the assignment without his consent.

The peculiar feature of this case is that the chancellor has vacated the assignment, against the most positive testimony of both partners that it was by one partner under the precedent authority of the other, and also that immediately after its execution it was affirmed by the other. It is manifest that the chancellor gave no credence to this testimony, and we are not prepared to hold that he should have done so.

Morris, the executing partner, was at Meridian, in this state, and Mayer, the other partner, was at Dallas, Texas. Morris testified that immediately upon making the assignment he telegraphed to Mayer, who replied by *telegram* the next day. Mayer testifies that, upon the receipt of the telegram informing him that the assignment had been made, he

" did not do any thing except to *write* Morris that it was all right."

The deed of assignment purports to have been made on June 24, but Morris states that it was written and dated on that day, but actually signed on the morning of the twenty-fifth. The bill of complaint of the creditors was filed at 6:45 A.M. on June 26, and the assignment was filed for record at 1:45 o'clock P.M. of that day. After the assignment had been made, and before and after the creditors' bill had been filed, Morris, the resident partner, stated to Messrs. Houston & Woods, attorneys for creditors, that Mayer did not know that the assignment was to be or had been made. One Voegel, a salesman of one of the complainants, testified that after the assignment had been made, but before complainants' bill was filed, Morris made a similar statement to him; he also testified that he afterwards met Mayer in Texas, who told him that he had not known any thing of the assignment until some time after its execution. On the other hand, both Mayer and Morris testify that on June 20 Mayer wrote a letter to Morris by which he expressly authorized him to make the assignment, which letter, Morris declares, was received by him in due course of mail, which would have been about June 22. This letter, which was produced in evidence, refers only to the execution of the deed of assignment, and distinctly authorizes Morris to execute it for both partners. It is subscribed "Adolph Mayer, of Mayer & Morris."

Evidently this letter, if written when it purports to have been, conferred full authority upon Morris to make the assignment. But it is remarkable that Morris, having received it, as he says, on or about June 22, should, on the 25th, have forgotten the authority it conferred, and that Mayer, when seen by Voegel in Texas, should have also forgotten that he had written it.

It is remarkable that the existence of this letter should have thus been forgotten by both parties until the necessity for its use in evidence arose; and more remarkable yet that,

of a very voluminous correspondence between the partners, this is the only one produced.

If the letter was, in fact, fabricated to meet the emergency of the case, that fact alone would be almost conclusive against the existence of any prior authorization by Mayer for the execution of the assignment, and certainly conclusive against it on the other facts in evidence.

Mayer, it seems, about the first of May preceding the assignment, had taken some three thousand dollars worth of the goods of his firm to Dallas, Texas. He says he sold these goods there and sent the money to Meridian to pay the debts of his firm. Morris says he does not know what became of these goods, but that no money was ever received from Mayer for them. There is also a very suspicious absence from the choses in action which ought to have been turned over to the assignee, of a note for some $2,000, which appeared upon the books of the firm, and which, according to the statement of Morris to the receiver, was probably taken by Mr. Mayer, the father-in-law of both the members of the firm.

The record is too suggestive of fraudulent devices to commend the testimony of the partners to credence.

*Prima facie* the assignment was that of one partner without the consent of the other, and therefore invalid. The burden of showing authority from the other partner rested upon the assignee, and though the testimony is ample if believed, we are not prepared to say that it should have been credited by the chancellor.

Mr. Robinson, the assignee, testified that Morris came to him shortly after the assignment had been executed, and showed him a telegram purporting to have been sent from Mayer, confirming the assignment. But the witness was uncertain whether it was the day of the execution of the assignment or the day succeeding; and if his testimony was to the effect that the telegram was actually from Mayer (which he does not state, and of course could not), it would yet be left

uncertain whether the ratification was before or after the complainants' rights had attached by the filing of their bill.

Undoubtedly there was at some time a ratification by Mayer; but if this was after the lien of complainants had attached, it could not avail as against them.

The power of one partner to act for the other rests upon the principle of agency, and though the act of one professing, but without authority, to act for another, may be afterwards approved by that other and validity given to the act, and though such ratification relates back to the original act and takes effect from that time, the rights of others intervening between the act and its ratification are not thereby affected. As to such persons, the power of ratification does not exist. Mechem on Agency, § 168; *Cook* v. *Tullis,* 18 Wallace, 332; *Taylor* v. *Robinson,* 14 Cal., 396; *Bird* v. *Brown,* 4 Exchq., 786; *Wood* v. *McCain,* 7 Ala., 800.

Since we concur in the view that the assignment was invalid by reason of want of authority in the partner by whom it was made, it is unnecessary to determine whether, if the authority had existed, it was void for actual fraud.

*Affirmed.*