UNITED BLUE–FLAME OIL STOVE CO. v. GLAZIER.

(Circuit Court of Appeals, Sixth Circuit. November 15, 1902.)

No. 1,097.

1. PATENTS—REISSUE—DELAY INVALIDATING.
    A delay of more than five years, before applying for a reissue on the
    ground of inadvertence, accident, or mistake, invalidates the reissue,
    unless excused by special circumstances.
2. SAME—OIL STOVES.
    The Ewert reissue patent No. 11,607 (original No. 361,934), and the
    Jeavons reissue No. 11,601 (original No. 463,629), each relating to blue-
    flame oil stoves, are void for excessive and unexcused delay in applying
    for such reissues, and also for anticipation of the original patents by one
    or more of the Morrill patents, Nos. 44,548, 55,033, and 60,224.
3. SAME—INFRINGEMENT.
    The Blackford reissue patent No. 11,592 (original No. 518,305), for a
    vapor burner, claim 9, if it exhibits invention, is limited by the prior art
    to the specific structure claimed. As so limited, held not infringed.

Appeal from the Circuit Court of the United States for the Southern
Division of the Eastern District of Michigan.
In Equity. Suit for infringement of reissue patent No. 11,607
(original No. 361,934) granted to Otto Ewert June 15, 1897, reissue

No. 11,601 granted to William R. Jeavons May 18, 1897, and reissue No. 11,592 granted to Atwell J. Blackford March 2, 1897, each for improvements in vapor burners. From a decree dismissing the bill, complainant appeals.

The following is the opinion of the circuit court, by SWAN, District Judge:

This suit involves oil and gas cook stoves having burners adapted to utilize oil as fuel and to burn the same with a blue flame. There are in use three types of blue-flame cook stoves. The first is designed to burn gasoline, the second to burn gas, and the third to burn oil. Each of these types aims to burn its fuel with a blue flame, in distinction from a white or yellow flame. Previously to the patents in suit, cook stoves adapted to burn kerosene or gasoline, and others designed to burn gas, had been in use for many years. There were also many prior patented devices for the same purpose. The blue flame evidences a more complete chemical combination of the carbon atoms of the fuel with oxygen than that effected by the white or red flame. The merits claimed for the blue flame in all constructions are that a cooking utensil may be placed directly thereon without coating the vessel with the black free carbon atom commonly called "soot," and by bringing the cooking utensil in direct contact with the flame the best application of the heat to the utensil is obtained. The bill in this cause alleged the infringement of four inventions secured by letters patent, but by stipulation one of these was eliminated from the cause. The patents which are now before the court, and alleged to be infringed by the defendant, are the Ewert reissue No. 11,607, June 15, 1897, claims 3 and 5; Jeavons' reissue No. 11,601, May 18, 1897, claims 5, 6, and 7; and the Blackford reissue No. 11,592, dated March 2, 1897, claim 9.

As regards each of these three patents and their originals, the bill makes identically the same averments, to wit: The original patent was inoperative or invalid by reason of defective or insufficient specification, or by reason of the patentee claiming as his own invention more than he had a right to claim as new; that such error arose by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention; that upon due application therefor, and upon surrender and cancellation of said original patents, new patents for said respective inventions were issued in accordance with the corrected specifications for the unexpired part of the term of said original patent. The answer denied the foregoing averments of the bill relative to said reissues and their originals, and also averred, concerning each of the reissues, in substance as follows: (1) Its claim was expanded and broadened upon the invention claimed by its original patent. (2) Its claim embraced inventions different from that claimed in the original patent. (3) During the years intervening between the issue of the original patent and the reissue, independent parties entered upon the manufacture of burners which were within the scope of the reissue claimed, but were not within that of the original patents. (4) Whatever right to the reissue might ever have existed had been abandoned by reason of delay in applying for such reissue. The defendant also insists that the bill, based on six claims of three different patents, is multifarious, unless the six inventions be found in the alleged infringing construction. It may be conceded that the labors of court and counsel are increased by the presentation in a single bill of so many different issues, yet it is not clear that this single suit would entail more labor than separate suits upon each patent.

The Ewert patent sued upon is dated June 15, 1897, and is a reissue of his original patent No. 361,934, dated April 26, 1887. The latter contained but one claim, which reads as follows: "In a vapor burner of the Argand variety, the combination, with perforated tubes located, respectively, inside and outside the wick, as shown, of a diaphragm made to extend laterally across the inner perforated tube, substantially as set forth." This single claim was by the reissue expanded into five claims. Claims 3 and 5 of the reissue, which it is charged are infringed, read as follows: Claim 3: "In a hydro-carbon burner, two perforated tubes and a diaphragm spanning the

bore of the inner tube below the upper end thereof, whereby a portion of said tube is made to project above said diaphragm, and a mixing space is produced in the upper end of said tube, substantially as described." Claim 5: "A vapor burner having a pair of perforated tubes forming a combining chamber, a diaphragm across the inner tube, said inner tube being provided with openings above said diaphragm through which vapor and gases from the combining chamber flow into the space over said diaphragm, substantially as described." Morrill's patent of 1864, and his two patents of 1866, and the Ewert, the Jeavons, and the Blackford reissues, all show, as elements of the patented devices, two perforated concentric combustion tubes, with a combining chamber between them, and a diaphragm, perforate or imperforate, across the inner tube at or near its top. Ewert's has an imperforate diaphragm which spans the inner tube below its top, designed "to arrest the current of air passing up through the inner tube and force it into the combining tube." Jeavons' shows alternatively a convex or concave diaphragm located at or near the top of the tube, and having either a central opening or several openings around its center. In Blackford's construction there are connected movable tubes and diaphragm having a central opening, and located variously near the top of the tube, and above this diaphragm an extension of the inner tube, which is partly imperforate, with large openings through its walls around its top. Morrill's constructions will be adverted to hereafter. The original Ewert patent was formally offered in evidence at the hearing. Notice that it would be put in evidence by the defendant had been given during the taking of the testimony. Its admission at the hearing was within the discretion of the court. It could not have occasioned any surprise to complainant and wrought it no injury. No application was made for leave to adduce testimony relative to the identity of the invention in the original and the reissue, nor was it claimed that the admission of the original patent could operate to the prejudice of the complainant. It was, in fact, for the complainant to show that the original contained substantially claims 3 and 5 of the reissue (Hoskin v. Fisher, 125 U. S. 221, 8 Sup. Ct. 834, 31 L. Ed. 759); and under the pleadings it was admissible (Oregon Imp. Co. v. Excelsior Coal Co., 132 U. S. 215, 10 Sup. Ct. 54, 33 L. Ed. 344).

The first inquiry is naturally the validity of the Ewert reissue, granted June 15, 1897, on an application filed May 18, 1897. This long delay, the fact that defendant and others as early as 1896 had engaged in the manufacture of blue-flame stoves which were not invasions of the invention secured by the original patent, and the enlargement in the reissue of that invention, warrant the claim that in themselves, separately and collectively, these facts are fatal to the validity of the reissue. As has been said, Ewert's original patent was granted April 26, 1887. The reissue was asked and made over 10 years later. The rule of diligence, in applying for the benefit of the statute authorizing the reissue of a patent for inadvertence, accident, or mistake, is laid down in Topliff v. Topliff, 145 U. S. 156–170, 12 Sup. Ct. 825, 36 L. Ed. 658, and prescribes "that due diligence must be exercised in discovering the mistake in the original patent." In that case the doctrine is reiterated that while the courts will not review the decision of the commissioner upon the question of inadvertence, accident, or mistake, unless his error is made manifest by the record, yet it is a question of law for the court, in most, if not all, cases, whether the application for reissue was made within a reasonable time. The prior decisions upon this point are collated in the opinion, and it is superfluous to cite them here. The case states the essentials to a valid reissue, viz.: (1) Identity of the invention it claims with that which appears from the specifications and claims of the original patent. (2) Due diligence in discovering the mistake in the original patent; the lapse of two years, when enlargement of the claim is sought, being ordinarily evidence of abandonment of the new matter to the public. In Wollensak v. Reiher, 115 U. S. 96, 5 Sup. Ct. 1137, 29 L. Ed. 350, it was held that the settled rule of decision is "that if it appears, in cases where the claim is merely expanded, that the delay has been for two years or more, it is adjudged to invalidate the reissue, unless the delay is accounted for and excused by special circumstances which show it to be not unreasonable."

In Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783, where the suggestion of inadvertence or mistake was that the claim was not as broad as it might have been, it was said by Mr. Justice Bradley: "This mistake, if it was a mistake, was apparent on the first inspection of the patent, and, if any correction was desired, it should have been applied for immediately." The foregoing cases, and those of Ives v. Sargent, 119 U. S. 652, 662, 7 Sup. Ct. 436, 30 L. Ed. 544, and Mahn v. Harwood, 112 U. S. 354, 363, 6 Sup. Ct. 451, 28 L. Ed. 665, hold that it is incumbent upon the party claiming under a patent reissued after the lapse of two years from the issue of the original patent to excuse the delay by proof of special circumstances.

Without multiplying authorities to the necessity for prompt action in seeking the correction of a defective patent, it is sufficient for this case that Ewert's long delay before applying for the benefit of the statute is neither explained nor extenuated. Prima facie it is fatal to the reissue, and conclusively so in the absence of excusatory facts. Comparison of the original with the reissue makes manifest that the purpose of the latter was, not to correct a defect of the original, but to bring within its compass matters it neither disclosed nor suggested. There is not a hint in the original of the mixing chamber or space which is made a prominent element in the reissue. This function of the inner tube above the diaphragm was clearly an afterthought, not a concept of his original device. Freeman v. Asmus, 145 U. S. 239, 12 Sup. Ct. 939, 36 L. Ed. 685. In the original he described and claimed what he called "improvements in vapor burners of the Argand variety." In claims 3 and 5 of the reissue he discards this limitation, and broadly claims monopoly for his arrangement of parts in all hydro-carbon and vapor burners. All beyond claims 1 and 2 of the reissue are obvious enlargements of the claim of the original patent, which disclosed their absence from it to the most careless reader. Ten years' meditation could make it no plainer. Nor does there seem to be any invention in the original device. The concentric perforated combustion tubes were in use before 1864, as Morrill admitted in his 1864 patent. Their combination with a diaphragm is shown in Morrill's patent of 1864, with three alternative constructions, viz., a cone-shaped plug, an imperforate diaphragm, and a foraminous diaphragm at the top of the inner tube. Morrill's first patent in 1866 shows a dome-shaped diaphragm, the base of which is just below the top of the inner tube, and his later patent of that year shows a pointed dome-shaped closure of the same tube with a central opening. The only departure from Morrill's first construction made by Ewert's first patent was to locate the imperforate diaphragm, "usually near the top of the perforated inner tube * * * to arrest the current of air passing up inside the burner [inner tube] and deflect the same into the flame," to use the language of his specifications in the original, which make no reference to Morrill's patent, which had evidently escaped Ewert's attention and that of the patent office. In the reissue Ewert makes a labored attempt to differentiate his device from Morrill's; but it is directed to the new features of the reissued patent, rather than to the patentability of his first construction. The Ewert patent, for these reasons, does not sustain the complainant's case.

### The Jeavons Reissue.

This patent is also vulnerable because of laches in obtaining it. The original was granted November 24, 1891. On an application filed April 8, 1897, a reissue was had dated May 18, 1897, after the lapse of nearly 5½ years from the issue of the original. The proofs show no excuse, nor is any pleaded for this delay, which, though not for so long a period as Ewert's, is unexcused,—equally effective to defeat the patent. The pleadings challenge the validity of the reissue, and it is incumbent upon the complainant to explain the delay "by proof of special circumstances." Mahn v. Harwood, supra; Ives v. Sargent, supra; Hoskin v. Fisher, supra; Wollensak v. Sargent, 151 U. S. 228, 229, 14 Sup. Ct. 291, 38 L. Ed. 137. All the objections which obtain to Ewert's reissue, because of his laches, are of equal force against Jeavons'. While this conclusion eliminates the Jeavons reissue from the suit, it is perhaps due to the labors of counsel and the importance of the case that the Jeavons reissue should be considered in-

trinsically, lest possibly another view might be taken of his laches. Claim 1 of Jeavons' original patent reads as follows: "In a vapor burner, a pair of perforated tubes having a combustion chamber between them, and a partition at the top of the inner tube having a passage to allow a limited quantity of air to flow through the same, substantially as described." Claim 2: "A vapor burner, provided with perforated combustion tubes in combination with a partition closing the upper end of the inner tube and having one or more air openings, substantially as described." By the reissue, claim 5 thereof was enlarged as follows: "The perforated tubes, forming a chamber between them, and a device at the upper portion of the inner tube, having a passage or passages adapted to deliver air in such volume as to maintain relatively limited combustion above said device and a closed area to shield the bodies of combustible gas flowing from the combustion chamber from currents of air from within the inner tube, and permit the said bodies of gas to commingle, substantially as described." Claim 6: "The perforated tubes forming a chamber between them, the inner tube provided with a device having an imperforate portion over which the vapor and gases from the said chamber flow and commingle, and an air passage or passages to deliver a limited volume of air to said gases over said device, substantially as described." The closed area mentioned in the fifth claim is an entirely new feature added to the reissue, and suggested, doubtless, by Ewert's application for a reissue, of whose patent Jeavons was part owner. Ewert's reissue application was pending in the patent office simultaneously with Jeavons'. The sixth claim of his reissue is also an enlargement of the second claim of his original, and of the same nature, though not as clearly stated as in the addition made to his fifth claim in the reissue. His seventh claim is not infringed, as defendant's diaphragm is located below the upper end of the inner tube.

Referring, in his specifications, to two only of Morrill's constructions, which show "both a foraminous cup or plate across the top of the inner tube and, as a modification, a solid plug set into said tube," he ignores Morrill's second patent of 1866. After mentioning Ewert's, he argues that "experience has demonstrated that the secret of perfect combustion under the best conditions yet developed in burners lies clearly between those several constructions,— Morrill's and Ewert's." Did he fathom this "secret" by original means? The defects of the Morrill burner he states to be: (1) Excessive supply of air through the foraminous diaphragm; (2) that the air is supplied over the entire surface of the diaphragm; (3) that no mixing place is left for the gases. He condemns Ewert's "improvement," because "it leaves a dead cooling place for the gases, when they drop to a temperature below the combining point with oxygen." "My invention," he says, "anticipates and remedies these defects by means of the air resisting, checking, or impeding device, partition, or plate, substantially as shown, described, and pointed out in the claims." He refers to Figs. 1, 2, 3, and 4 of his drawings of the various forms of this device, which in the art is termed a "diaphragm." He further says: "This device [diaphragm, D] may, of course, have any one of the forms shown, or such other form as would operate with like effect, or be the equivalent thereof in effect or operation, provided that the imperforate part of the plate, D, is from about the center thereof to its edge, and so constructed as to have a shielded combining space as well as an air supply." This device, like Ewert's, is purely an old combination of old elements. He used the same means to facilitate combustion as those employed by Morrill, varying the form of Morrill's diaphragm of 1864, but adopting the central opening in the diaphragm shown in Morrill's second patent of 1866. He reduced the number of perforations in the former; but it is nevertheless a perforated or foraminous plate or partition, which serves to admit air for the combustion of the gases or vapors. He changed the hemispherical diaphragm with a single central opening, shown in Morrill's second patent of 1866, into convex or concave caps having one or more openings. Jeavons terms this diaphragm, D, "with one or more relatively small passages or openings at or near its center," with the imperforate portion or area thereof, "a distinguishing and novel feature of this device, D." Morrill, by the number of the perforations of his first patent in 1866, may have

unduly reduced the imperforate area in the diaphragm, and by so much the effectiveness of the so-called "mixing space," if that is a meritorious feature. This, however, is not necessarily the result, but is dependent upon the size, as well as the number, of the holes in the plate. If Jeavons' burner effects a better combustion of the gases or vapors with the oxygen, it is apparent that it does it by substantially the same means as Morrill's. The development by experiment of a medium between a wholly imperforate diaphragm and one perforated with one or more openings is a mere carrying forward of Morrill's idea,—the step forward of a skilled mechanic. The difference between the results obtained by the two constructions is at most a question of degree, and its achievement by substantially the same means is not invention. Smith v. Nichols, 21 Wall. 112, 119, 22 L. Ed. 566; Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647; Grant v. Walter, 148 U. S. 553, 13 Sup. Ct. 699, 37 L. Ed. 552.

Had Jeavons been first in the field with his patented construction, Morrill's diaphragm would clearly have infringed it. Jeavons, being 33 years later, originated nothing patentable in changing the number or size of the perforations of this partition. Equally without originality, and unsuggested by his original patent, is his "closed area to shield the bodies of combustible gas flowing from the combustion chamber from currents of air from within the inner tube and permit the said bodies of gas to commingle, substantially as described." This is elsewhere in Jeavons' reissue described as "the dead space over the device, D" (the diaphragm), which he says serves an important purpose, in that "it becomes a common mixing ground for the unequal and inadequately combined gases." This alone he admits is insufficient, because, in the absence of perforations, combustion is limited to the outer or peripheral surface of that body of gas on the upper side of the diaphragm. To produce what he calls "a distinct body of flame centrally in the body of the gases and enveloped thereby," he adopted the perforated diaphragm. The end sought was effected by Morrill's foraminous diaphragm, or that of 1866 having a central opening, whether with as "good and satisfactory results" or not is of no moment for the reasons stated. Jeavons merely decreased the number of openings in Morrill's closure, which he variously located at "the top of the inner tube" (claim 1), "closing the upper end of the inner tube" (claim 2), "spanning the inner tube at its upper portion" (claim 3), "spanning the inner tube" (claim 4), "at the upper portion of the inner tube" (claim 5), "the inner tube provided with a device having an imperforate portion, substantially as described" (claim 6), and "at the upper end of the inner tube" (claim 7). The upper side of this variously located plate or partition he called a "mixing chamber" or "mixing ground." This name and idea he apparently owes to Ewert, of whose application for a reissue, filed May 18, 1897,—the date of Jeavons' reissued patent,—the latter seems to have had ample knowledge before it was filed, and of which he was part owner. In short, Ewert appropriated Morrill's imperforate closure for the inner tube, slightly changing its position, while Jeavons made Morrill's foraminous cap of 1864 less foraminous, and gave it a sweeping and varying relation to the top of the tube, and without change adopted Morrill's central opening diaphragm of 1866. Neither Ewert nor Jeavons invented the combinations they claimed, or any of their parts. It is well argued that, if either were inventors, defendant could not have in the same structure the several arrangements of the patents sued upon.

### The Blackford Reissue.

Only the ninth claim of this patent is made the subject of testimony by complainant. That claim reads as follows: "The burner, and connected inner and outer perforated combustion tubes, having a chamber between them, the inner tube being provided with a diaphragm in its upper end, having a central air opening or passage, and the said inner tube extended above the outer tube, and having a series of large openings about its top, above said diaphragm, said inner tube being imperforate between said diaphragm and said openings, substantially as described." This claim, omitting the single word "connected," qualifying the relation of the combustion tubes, when compared with Jeavons' claim, shows the same elements arranged

substantially in the same way as in Jeavons', Ewert's, and Morrill's vapor burners to and including the word "passage" in line 5 of the claim. What follows that word in the claim, and the qualifying word "connected" referred to above, define the extent to which Blackford has in claim 9 varied the form of the parts used by his predecessors in the art. Specifically, his variations are: (1) He limits the claim to a device having "connected combustion tubes." This limitation is of the essence of the alleged improvement, for in his specifications, after describing the means of connection and claiming other equivalent means, etc., he says: "This construction makes it easy and convenient for replacing the tubes, as for trimming the wick or lighting the burner." In the specifications he sets forth the advantages and various methods of moving and adjusting the connected combustion tubes and modifications of the constructions, delineated in Figs. 3 and 4 of the drawings. Ewert's patent, No. 334,166, shows an inner perforated tube supported by radial wire arms to the outer tube. (2) The extension of the inner tube above the outer tube. (3) The inner tube, having a series of large openings about its top and above said diaphragm. (4) The inner tube imperforate between the diaphragm and said openings about its top. None of the elements in claim 9 are separately claimed, and they are, therefore, not within the monopoly of the patent. Rowell v. Lindsay, 113 U. S. 97, 5 Sup. Ct. 507, 28 L. Ed. 906. It is true that the connection of the tubes is not essential to the combustion of the vapor or gases; but Blackford makes it an element of claims 8 and 9 of his patent, and, as the latter is the basis of the charge of infringement, all its elements must be found in defendant's construction to sustain that charge. Rowell v. Lindsay, supra; McCormick Harvesting Mach. Co. v. Aultman, Miller & Co., 16 C. C. A. 259, 69 Fed. 371; Muller v. Lodge & Davis Mach. Tool Co., 23 C. C. A. 357, 77 Fed. 621.

The common aim of all manufacturers is perfect combustion of the vapor or gases, and to this end all constructions have employed in varied form the principle of the familiar Bunsen burner for the production of intense heat. The history of the art, and in particular the various burners in evidence in this case, demonstrate that the means, forms, and arrangements of parts and their several functions in all these constructions are substantially the same. Each element in Ewert's, Jeavons', and Blackford's vapor burners performs the same functions, and each holds to other parts of the construction the like relation as its prototype in Morrill's devices and others prior. The claim sued upon,—if it exhibits invention,—independent of the objections sustained as to the Ewert and Jeavons reissues, cannot be regarded as broad or meritorious, but must be confined to the precise construction claimed. Thus construed, it is evident that defendant's burner differs essentially from the subject of Blackford's ninth claim, which describes and illustrates only the burner having its combustion tubes "connected with one another," as his specifications state, for the purpose and in the manner set forth in the patent,—not connected to the shell of the burner as in the defendant's manufacture. This is confirmed by the words "substantially as described," at the end of the ninth claim, which clearly limits the connection to the described junction of the tubes to each other. In defendant's device the tubes are secured in place by two rods at right angles, passing through their diameters, fastened at each end to the shell of the burner. Thus held radially, the tubes cannot be removed for any purpose without destroying the construction. This feature of removability of the tubes, and the device for raising or lifting them for lighting and other purposes, is a prominent factor of utility and convenience upon which Blackford dilates. Defendant's radial fastenings to the shell negative the possibility of interchanging his connections with those of Blackford. This radial difference of construction is not the equivalent of Blackford's intertubal connection, but excludes defendant's device from the compass of Blackford's ninth claim by defeating the declared function of that connection. Fay v. Cordesman, 109 U. S. 408, 417, 419, 3 Sup. Ct. 236. 27 L. Ed. 979, presents a case much like this. It was a suit in equity brought for the infringement of three letters patent. The third patent was for an improvement in band-sawing machines. Infringement of the first and other claims of this patent was alleged. The first claim read as follows: "(1) The frame, A, A', A", in combination with the lower arbor bearing,

said frame being constructed as herein described, and with a depression, A‴, permitting a ready removal of the arbor, as explained." The court, in its opinion by Mr. Justice Blatchford, thus held: "As to claim 1, it is for the combination of the three sided frame, A, A′, A″, with the lower arbor bearing, when the frame is constructed with a depression, A‴, intervening between the columns, A′ and A″, which leaves exposed a seat which is entirely open upward, so as to give convenient access to the lower arbor bearing, to attach, inspect, and regulate it, and also detach it, with its journal box, by lifting the arbor and journal box bodily upward, without removing the pulley from the arbor. In the defendant's machine the seat is not entirely open upward, and there is a hole through the body of the frame to receive the lower arbor bearing, and the arbor bearing cannot be removed without detaching the pulley from the arbor. This claim is not infringed." On page 420, 109 U. S., and page 244, 3 Sup. Ct., 27 L. Ed. 979, it is further said: "The claims of the patent sued on in this case are claims for combinations. In such a claim, if the patentee specifies any element as entering into the combination, either directly by the language of the claim, or by such a reference of the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is in his province to make his own claim, and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality,"—citing Water Meter Co. v. Desper, 101 U. S. 332, 25 L. Ed. 1024, and Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819, 27 L. Ed. 601.

It has not been found necessary to consider the defense that Blackford was not the inventor of the device covered by his patent. For the reasons stated, the bill must be dismissed, with costs.

Thomas B. Hall, for appellant.

C. F. Burton, for appellee.

PER CURIAM. This is a bill for infringement of three reissue patents, all belonging to complainant below and all being for invention adapted to burn kerosene oil with a blue flame in a cook stove. The court below held that reissue patent No. 11,607 to Otto Ewert, and the reissue of patent to Wm. R. Jeavons, No. 11,601, were void for excessive and useless delay in the applications for such reissue, and also that the original claim carried into the reissued patents to each were void for anticipation in the three Morrill patents, Nos. 44,548, 55,033, and 60,224, and that the reissued Blackford patent, No. 11,575, was so narrowed and limited as to be at most good for the specific structure claimed and described, and that, so limited, the defendant does not infringe. Upon the opinion of District Judge SWAN, as to the points mentioned, this court affirms the decree of the court below.