CLEVELAND FOUNDRY CO. et al. v. DETROIT VAPOR STOVE CO.

(Circuit Court, E. D. Michigan, S. D.   April 20, 1903.)

No. 3,544.

1. PATENTS—PROCESS—CLAIM FOR FUNCTION OF MECHANICAL DEVICE.
   A process claim in a patent which is nothing more than for the operative effect or function of a mechanical device described in another claim is invalid.

2. SAME—VALIDITY—OIL BURNER.
   The Jeavons patent No. 475,401, for an oil burner, claim 1, is void because granted on an amendment of the application which was not within the scope of the original, or, if within such scope, for anticipation by patent No. 438,548 to the same inventor, and also for lack of invention in view of the prior art.   Claim 5, for a process, is also void as covering only the functions of the mechanical devices described in the prior claims.

3. SAME—INFRINGEMENT—VAPOR BURNERS.
   The Jeavons patent No. 438,548, and the Jeavons and Lannert patents Nos. 461,219 and 467,466, each for a vapor burner, construed, and *held* not infringed.

In Equity.   On bill for infringement.

Thos. B. Hall and Jesse B. Fay, for complainants.
Parker & Burton, for defendant.

SWAN, District Judge.   This is a bill in equity for infringement of four patents, the first granted for hydrocarbon burner to William R. Jeavons, assignor of one-half interest to John A. Lannert (No. 475,401); the second to William R. Jeavons, assignor of one-half interest to John A. Lannert (No. 438,548); the third and fourth patents to said Jeavons and Lannert jointly, and respectively numbered 461,219 and 467,466.

The proofs show that complainants Jeavons and Lannert have jointly retained ownership of said four patents in suit from the respective dates of their issue, and that complainant the Cleveland Foundry Company is the exclusive licensee under said several patents, and was such licensee prior to the beginning of this suit.   The bill charges infringement of each of the four patents sued upon, and, collectively, of ten claims of these patents.   Complainants designate patent No. 475,401 as their "main patent," although last issued, and the other three as "improvement patents."   The defenses are:   (1) That the patents are void because of want of invention when compared with pre-existing patents.   (2) That the defendant does not use the combination claimed in the first patent.   (3) That the defendant does not use the combination claimed in the second patent.   (4) That the defendant does not use the combination claimed in the third patent.   (5) That the invention characterized by the claim of the second patent is not shown and described with sufficient clearness therein to warrant the claims of that patent.   (6) That the fourth patent is void, not only because of pre-existing patents to other persons, but is especially open to objection in that

¶ 1. See Patents, vol. 38, Cent. Dig. § 6.

its claims are drawn to inventions shown and described in earlier: patents to the same applicant; also that some of them are drawn to inventions shown and described and claimed in earlier patents to the same applicants. (7) That the fourth patent was so completely and substantially changed by so-called "amendment" during its progress through the Patent Office as to characterize an entirely different invention from that which applicant sought to obtain in the first instance, and is therefore void. Especially it is open to this objection because the rights of other persons became established in the meantime.

The "Main Patent," as the complainants style it (No. 475,401), was issued May 24, 1892, on an application filed December 20, 1888, and is for an "oil burner." The first patent chronologically is No. 438,548, bearing date October 14, 1890, and is for a "vapor burner." The application therefor was filed January 6, 1890. Complainants style this the "first improvement patent." The next in date is letters patent No. 461,219, issued October 13, 1891, for a "vapor burner," on an application filed December 19, 1890. This complainants term the "Second Improvement Patent." Next came letters patent No. 467,466, dated January 19, 1892, for a "vapor burner," on an application filed November 4, 1891. This complainants term the "third improvement patent."

In 1888 the art of burning a liquid fuel had been well advanced. The burning or combustion of fuel means the production of a rapid chemical union of oxygen and either hydrogen or carbon, or the two together. The liquid fuel most commonly used is a hydrocarbon. None of the hydrocarbons in common use (ranging from light gasoline to heavy kerosene) will burn as a liquid in its pure state. The liquid must be finely divided, sprayed or vaporized, and so mingled with the air that the air very greatly exceeds the liquid in mass. The liquid is very easily vaporized. Gasoline will give off vapor at a very low temperature, and will be vaporized in a very short time at a temperature of about 60 degrees. Its expansive pressure when vaporizing is such, even at ordinary temperature, that if the gasoline be poured onto water in a vessel which is closed except for a standpipe, the lower end of which dips into the water, the pressure produced by the vaporizing liquid will lift from 40 to 50 inches of water through the pipe (at 60 or 70 degrees F.). The liquid expands to a vapor which occupies about 200 times the space of the liquid, and this must be mixed with 50 or more times its volume of air to burn.

In the specifications of the so-called "main patent," Jeavons states that he has "invented certain new and useful improvements in oil burners. My invention relates to hydrocarbon burners, and it consists in the method and construction substantially as shown and described and particularly pointed out in the claims." After reciting the different ways of obtaining a distribution of hydrocarbon oils or vapors or combustible air, "previously in use," viz.: (1) The distribution of oil by capillary attraction, as by a wick, as in an ordinary lamp; (2) by spraying the oil by means of a jet of air or steam, under pressure; (3) by generating the vapor in a retort

in which the vapor is subjected to a head or pressure, and depending on the artificial pressure in the retort to feed the vapor; (4) by evaporating or vaporizing gasoline or other light hydrocarbon on an exposed surface by passing a current of air over the same and then feeding the carbureted air to the burner, the old and well-known carbureting devices being of this class.

Jeavons declares that his invention differs wholly from these, and involves (1) the conversion of the oil into vapor by exposing the oil to a heated surface, and (2) then distributing or conveying the vapor by its gravity to the place or places where or about which the vapor is supplied to the burner and maintains combustion. "In carrying out the method, I rely," he says, "on the superior density or gravity of the hydrocarbon vapor, as compared with air, to distribute or move the vapor, in the presence of air, to the point where it is to be utilized in support of combustion." He provides "a channel, holder, or space which is so inclosed or guarded as will provide a suitable path for the vapor and prevent disturbance by air, and also prevent such open and free exposure to air as will permit the vapor to be consumed before it is distributed, and thus defeat the uniform and constant supply thereof evenly to all parts of the burner."

After describing the operation of his oil burner, Jeavons says:

"It will be seen by the foregoing description that my invention comprises a construction in which vapor is received and distributed in a channel or chamber by gravity, in such quantity as to prevent admission of air through the supply opening provided for vapor, and to cause a steady and uninterrupted flow of vapor to the combustion chamber. By the words 'free opening,' as used herein [in the specifications], I mean an opening of sufficient area to supply the vapor freely to the burner, and in which no artificial or outside pressure is employed to cause the vapor to flow into the combustion chamber —such, for example, as a head of oil or other equivalent means commonly used in gasoline stoves to force the vapor through a jet orifice."

The bill charges infringement of claims 1 and 5 of this patent. These are:

Claim 1: "A hydrocarbon vapor burner, consisting of a vapor holder constructed for the free and uniform distribution of the vapor therein by gravity, and having a free opening for the escape of the vapor, in combination with perforated combustion walls having a flame space between them in communication with the said holder, substantially as described."

Claim 5: "The process herein described of converting liquid hydrocarbon into vapor and conveying and burning the vapor, which consists, first, in vaporizing the oil by exposure to a heated surface, then conveying the vapor by gravity to the points where it is to be burned, and then supplying air to the vapor in limited quantities to meet the demands of combustion, substantially as described."

The specifications, exclusive of the fifth claim, do not otherwise mention a process than by describing the operation of the oil burner. The invention claimed is, "Certain new and useful improvements in oil burners," and the patent was granted for an "oil burner."

It has been held that there cannot be in the same patent a claim for a machine and a claim for the process of using that machine. Gage v. Kellogg (C. C.) 23 Fed. 891–894, and cases cited. This would make the fifth claim of doubtful validity. The "process" it

describes is nothing more than a claim for the operative effect or function of a vapor burner. This is not patentable. Risdon Iron & Locomotive Works v. Medart, 158 U. S. 77–79, 15 Sup. Ct. 745, 39 L. Ed. 899; Westinghouse Co. v. Boyden Power Co., 170 U. S. 555–557, 18 Sup. Ct. 707, 42 L. Ed. 1136.

There is another substantial objection to this claim. The means claimed for conveying the vapor to the combustion chamber, which is immediately above the vapor holder, are, "conveying the vapor by gravity to the points where it is to be burned." As the vapor is confessedly of greater specific gravity than air, the process claimed is obviously irreconcilable with the law of physics. When the vapor has expelled the atmosphere from the vapor holder by reason of its greater weight, the force which carries that vapor to the higher plane of the combustion chamber must be one exerted in the contrary direction to that of gravity. The specifications state:

"This clear vapor fills the holder to the exclusion of air, so that combustion cannot occur therein, but occurs outside the holder between the perforated tubes or walls, where the air can combine with it," etc.

This, Jeavons states (lines 109 to 112 inclusive, page 2 of specifications), is the space within the perforated tubes or walls shown in the figures, and that between the concentric walls. The expansive force of the liquid when vaporizing—increasing 200 times the space occupied by a drop of the liquid—is the true uplifting conveyance of the vapor. When the vapor has filled the channel space or vapor holder, the only agency operating to uplift it must come from the vaporization of the liquid fed into the vapor holder and there vaporized. Its expansive pressure acts on the superincumbent vapor and raises it to the combustion chamber. Each successive drop of the liquid when vaporized crowds out a bulk of vapor equal to itself. Complainants' witness Morley so testifies:

"XQ. 36. In this particular case the supply [of the liquid] consists of a body of gas or vapor that is generated from a mass of liquid that enters the trough [or vapor holder] at or very near its bottom or lowest part, and the vapor must rise from the point at which the liquid is substantially to the top level of the trough, in order to keep the trough full. Is not that so? A. Yes. XQ. 37. Now, what force is it that lifts the vapor from the place at which the liquid is located to the top of the trough? A. The expansive force of the vapor produced by heating the liquid."

An interpretation of this clause has been suggested to reconcile it with the operation of the law of gravity, that the words "by gravity" mean that the liquid hydrocarbon is fed through the inclined supply pipe by gravity, and thus the vapor is conveyed "by gravity" to the points where it is to be burned. This recondite construction suggests a high degree of invention in the use of language to conceal thought, but is too farfetched and artificial to be useful. It is the "nose of wax * * * to make the claim include something more than or something different from what its words express. * * * The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is, and it is unjust to the public, as well as an evasion of the law, to construct it in a manner different from the plain import

of its terms." White v. Dunbar, 119 U. S. 47-52, 7 Sup. Ct. 72, 30 L. Ed. 303.

For still another reason the fifth claim must be denied validity. The original application and its amendments prior to April 25, 1892, laid no claim to a process, but defined mechanisms only. If the process it describes is anything more than for the use of the particular machine patented, it is for a different invention (James v. Campbell, 104 U. S. 356, 26 L. Ed. 786; Wing v. Anthony, 106 U. S. 142, 1 Sup. Ct. 93, 27 L. Ed. 110), and cannot be sustained on the original application and its amendments, under the authorities cited infra in the examination of the first claim. The fifth claim must therefore be eliminated from the case.

The sixth and seventh grounds of defense present the fundamental objections to the main patent, that, while the original application therefor was pending in the Patent Office, Jeavons enlarged his claims by amending to include a different invention from that set forth in the application and its amendments prior to April 25, 1892. Each of these, if true, avoids the patent. Chicago & N. W. R. Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121. For that reason they will be first considered.

The history of the application and its vicissitudes in the Patent Office is as follows: It was filed December 20, 1888, and emphasizes the open generator as distinguishing his burner from prior constructions. He describes his invention substantially as follows:

"The object of this invention is to produce an oil burner (1) that will not smell, either when starting or stopping it, (2) that will produce perfect combustion with blue flame, (3) and will be under perfect control by the operator to produce more or less heat or put it out altogether. The generator is open, in contradistinction to a closed generator, as is used in gasoline vapor burners, * * * and the gases produced cannot be under pressure. It has a regulating valve between itself and the source of supply, not between itself and the flame. * * * Its purpose is to vaporize oil as fast as it flows through the valves. * * * It is essential to have some little wicking to start the generator. The generator can be of any form. All that is necessary is that the flame should rise in an inclosed space, and admit the air to mix within a divided form."

Fig. 1 shows a vertical section of a burner open around its upper edges. Fig. 2 is a vertical section of a pan-shaped burner. Fig. 3 shows the burner attached to a common form of gasoline burner. Fig. 4 is a plain view of the burner. Fig. 5 is a detail of a dial plate to denote the degree or opening of the regulating valve. A represents the burner proper having an opening, a, at the top of a wick, a', laid in the channel. B represents the walls perforated to admit air; these are removable like a lamp chimney. C is the outlet valve for the oil. In Fig. 2 the burner has a cap, E, to which the commingling pipes are attached, and the opening, a, is within this cover.

Then followed five claims: (1) A regulating valve between the generator and the source of supply. (2) An open generator in combination with perforated walls and a regulating valve. (3) An open generator with absorbent material, a regulating valve, and a

source of supply. (4) Open supplemental generator, main generator, controlling valve, perforated walls, and source of supply. (5) An index valve for the purpose above stated, in combination with the regulating valve.

On examination it was found that no one of these claims could be allowed, because found in patents that had been previously issued. The applicant directed the cancellation of all the claims, and substituted six others. These involved: (1) A generating chamber constructed to diffuse gases throughout the chamber, with an opening for their escape. (2) A generator open at top, and in combination with perforated side walls above the generator. (3) A generating chamber with an inclined feed pipe, a delivery pipe, also inclined, and valves in said pipes. (4) A generating chamber, inclined feed, and valve. (5) A generator, perforated concentric tubes, closure for top of inner tube, outer tube open. (6) A generator with a top opening, perforated tubes, feed pipe, and valve in combination.

These claims were all rejected on reference to existing patents. Applicant directed that the first and second claims be canceled, and filed three substituted claims. An amendment to the fifth (which became the sixth) was directed, and then all the claims except substituted claims 1, 2, and 3, and the amended sixth, were canceled.

The claims then stood, after the necessary change of ordinals: (1) A vaporizing oil burner, having a generating chamber provided with a contracted neck, and an opening through said neck for the escape of vapor, substantially as specified. (2) In a vaporizing oil burner, a metallic generator provided with an opening along its top narrower than the chamber of the generator, in combination with a wall above said opening having parallel sides, said wall provided with perforations to admit air, substantially as set forth. (3) A vaporizing oil burner, having a continuous chamber and a continuous opening over the chamber, said opening contracted to less width than the chamber, in combination with perforated parallel walls extending upward from about the opening, and having a clear, open space between them at their top, substantially as set forth. (4) In an oil burner, a generator having an opening along its top portion, with two perforated tubes, one within the other, forming walls extending vertically from about said opening, the inner tube being closed at its top and open at its bottom, and the outer tube open at its top, substantially as set forth.

The fourth was allowed by the examiner; the other three were rejected August 17, 1889. On appeal the board of examiners affirmed the decision of the primary examiner, December 9, 1889. No further step was taken in this application until November 6, 1890, when applicant filed his reasons for appeal from the decision of the board of examiners to the Commissioner, who, on January 29, 1891, reversed the decision of the examiners in chief, and sustained claims 1, 2, and 3. These, with the fourth claim allowed by the examiner, constituted, with the specifications, Jeavons' application in its completed form. The case was remanded by the Commissioner to the primary examiner. That officer, on February 25, 1891, the case

having been reopened by the Commissioner, held that the invention claimed is anticipated by applicant's former patent No. 438,-548, granted October 14, 1890, "vapor stoves," and rejected the application. To this ruling Jeavons submitted, and on April 25, 1892, directed the cancellation of the drawing and of the specifications, and claims which had been sustained by the Commissioner, and substituted another drawing. His acquiescence in that ruling and in the rejections preceding it conclude Jeavons from denying the lack of invention in those claims and the identity of the invention set forth in his original application of December 20, 1888, and all its amendments made prior to April 25, 1892, with that covered by the patent of October 14, 1890, which was applied for and granted pending the patentee's application of December 20, 1888. Notwithstanding the fact that Jeavons had thus obtained a patent for all that was patentable in his application of December 20, 1888, as it stood prior to April 25, 1892, and it had thus become functus officio, on April 25, 1892—one year and two months after the examiner had so decided, and over three years and four months after the filing of the original application of December 20, 1888—he resurrected (for amendment only) the application which the examiner had ruled was anticipated by his patent of October 14, 1890, so far as to direct the cancellation of the drawing, the substitution of a new drawing therefor, the cancellation of the specifications and claims, and the insertion of new specifications and claims. May 2, 1892, he instructed the Patent Office to "erase the entire description and claims submitted in amendment filed April 25, 1895," and substituted the following, i. e., those on which the "main patent" was granted. For comparison, the claims rejected and those held anticipated by the patent of October 14, 1890, those of April 25, 1892, and those of the patent in suit, are set forth in parallel columns:

Claims rejected or anticipated:

Having thus described my invention, what I claim as new and desire to secure by letters patent is:

(1) In an oil burner, a regulating valve between the generator and the source of supply, substantially as set forth.

(2) In an oil burner, an open generator in combination with perforated walls and a generating valve, substantially as set forth.

(3) In an oil burner, an open generator in combination with absorbent material, a regulating valve, and a source of supply, substantially as set forth.

(4) In an oil burner, the open supplemental generator, main generator, controlling valve, perforated walls, and source of supply, substantially as set forth.

(5) In an oil burner, a regulating valve between the generator and source of supply, in combination with an index finger and an index plate to denote the degree of opening of the valve, whereby the amount of oil flowing through the valve is accurately determined, substantially as set forth.

Witnesses:
    I. T. Corey.
    H. T. Fisher.

William R. Jeavons.

Claims of April 25, 1892, and those of "Main Patent," erase claims, and insert:

(1) In an oil burner, a generating chamber constructed to diffuse the gases throughout the chamber, and an opening for the escape of the gases, substantially as set forth.

(2) In an oil burner, a generator provided with an opening along its top, in combination with perforated walls extending from either side of the said opening and serving to conduct the vapor and admit air thereto, substantially as set forth.

(3) In an oil burner, a generating chamber, a delivery pipe set at an inclination to the chamber, a supply pipe at an angle to the delivery pipe, and a valve in the angle of said pipes, substantially as set forth.

(4) In an oil burner, a generating chamber, a delivery pipe set at an inclination to said chamber, and a valve to close the delivery pipe, said pipe having a channel beneath the said valve open to the generating chamber, whereby the oil in said pipe will be discharged and consumed after the valve is closed, substantially as set forth.

(5) In an oil burner, a generator having an opening along its top portion, with two perforated tubes, one within the other, forming walls extending vertically from above said opening, the inner tube being closed at its top and the outer tube open, substantially as set forth.

(6) In an oil burner, a generator provided with an opening in its top to allow a free escape of the vapor and perforated walls about said openings, in combination with an inclined delivery pipe for feeding oil to the generator and a valve to control the flow of oil, substantially as set forth.

Erase claims 1 and 2, and insert:

(1) A vaporizing oil burner, having a generating chamber provided with a contracted neck and an opening through said neck for the escape of vapor, substantially as set forth.

(2) In a vaporizing oil burner, a generator provided with an opening along its top narrower than the chamber of the generator, in combination with a wall above said opening having parallel sides, said wall provided with a series of perforations to admit air, substantially as set forth.

(3) A vaporizing oil burner, having a continuous chamber and a continuous opening over the chamber, said opening contracted to less width than the chamber in combination with parallel perforated walls extending upward from about the opening and having a clear open space between them at their top, substantially as set forth.

Amendment August 6, 1889.

The Commissioner of Patents:

In the matter of the application of William R. Jeavons, oil burners, filed December 20, 1888, No. 249,151, claim 1, line 1, erase "a" and insert "an unventilated."

In claim 2, line 1, insert "metallic" before "generator," and erase "a series of" in line 4.

Erase claim 3, and substitute:

(3) A burner for diffusing and burning hydrocarbon gases, consisting of a nonventilating continuous chamber, having an opening above contracted to less width than the chamber, in combination with parallel perforated walls extending upward from about the opening, substantially as set forth.

Erase claims 4 and 5.

Change ordinal of claim 6 to "4," and amend said claim 6 by erasing in last line "and the outer tube open," and inserting "and open at its bottom and the outer tube open at its top."

Erase claim 7.

Appeal taken September 27, 1890; decision affirmed December 9, 1889.

Appeal to Commissioner, November 6, 1890; decision reversed January 29, 1891.

Reopened and rejected February 19, 1891.

Amended by filing substitute specification April 25, 1892.

Having thus described our invention, what we claim as new, and desire to secure by letters patent, is:

(1) A hydrocarbon vapor burner, consisting of a vapor holder constructed for the free and uniform distribution of the vapor therein, and having an opening for the escape of vapor, in combination with perforated combustion walls

,having a flame space between them in communication with the said opening, ;substantially as described.

(2) A vapor burner provided with a vapor chamber having walls to confine the vapor, whereby the vapor is caused to travel uniformly to all parts of the .chamber, and an opening in said chamber for the escape of vapor, in combination with perforated tubes having a flame space between them open to said chamber, substantially as described.

(3) The process of producing and distributing clear hydrocarbon vapor, consisting in feeding the oil in suitable quantity to a heated surface and thereby converting the oil to a vapor, and then conducting the vapor, unmixed with air, by gravity to the point where it is to be burned, substantially as described.

(4) The process herein described of converting liquid hydrocarbon into vapor and distributing and burning the vapor, which consists, first, in admitting the oil to a metallic surface heated to a degree which will vaporize the oil, then distributing the clean vapor thus produced to the points where the vapor is burned, and then supplying air to the vapor at successive elevation and in limited quantity, and burning the mixture, substantially as described.

(5) In an oil burner, a generator having an opening along its top portion, with two perforated tubes, one within the other, forming walls extending vertically from about said opening, the inner tube being closed at its upper portion and open at its bottom, and the outer tube open at its top, substantially as described.                                                                H. T. Fisher, Atty.

Having thus described my invention, what I claim is:

(1) A hydrocarbon vapor burner, consisting of a vapor holder constructed for the free and uniform distribution of vapor therein by gravity, and having a free opening for the escape of vapor, in combination with perforated combustion walls having a flame space between them in communication with said holder, substantially as described.

(2) A vapor burner having a channel in which the vapor is distributed or conveyed by gravity, substantially as described.

(3) A vapor burner having a vapor receiving and conveying channel or chamber provided with a free opening of relatively small area communicating with the combustion chamber, in combination with a combustion chamber having openings for the admission of air to support combustion, substantially as described.

(4) The process herein described, consisting, first, of converting the oil into vapor, and then conveying the vapor by gravity to the place where it is oxygenized, substantially as described.

(5) The process herein described of converting liquid hydrocarbon into vapor, and conveying and burning the vapor, which consists, first, in vaporizing the oil by exposure to a heated surface, then conveying the vapor by gravity to the points where it is to be burned, and then supplying air to the vapor in limited quantities to meet the demands of combustion, substantially as described.

It is evident that the purpose of ingrafting the "amendments" of April 25 and May 2, 1892, upon the original application of December 20, 1888, was to give continuity to that application, and thereby enable the applicant to assert anticipation of all improvements or devices which had gone into use or been made in the three years and four months between December 20, 1888, and May 2, 1892. In Railway Company v. Sayles, 97 U. S. 563, 24 L. Ed. 1053, where an amended application and model, upon which a patent was issued, was filed five years after the original application, the court said:

"If the amended application and model filed by Tanner five years later embodied any material addition to or variance from the original—anything new that was not comprised in that—such addition or variance can not be sustained on the original application." The law does not permit such enlargements of an original specification, which would interfere with other inventors who have entered the field in the meantime, any more than it does with the

case of reissues of patents previously granted. Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has in the meantime gone into public use."

In Michigan Central R. R. Co. v. Consolidated Car Heating Co., the Circuit Court of Appeals, in an elaborate opinion by Judge Severens (67 Fed. 125–130, 14 C. C. A. 232), applied the same doctrine. In that case the patentee of a car-heating device filed specifications and drawings in which he made no claim for an arrangement of steam pipes, without which his application was valueless. Seven months thereafter he amended his specifications. Of the new feature introduced by the amendment Judge Severens says (page 129, 67 Fed., page 240, 14 C. C. A.):

"The combination is useless without that feature, and the bringing it in would be the last step in reaching success. If it was invention, it was an invention not hinted at in the original application; and, if the patent is to be restricted to the substance of the application, the claim is invalid because the invention was not useful. * * * We are of the opinion that the second claim cannot be supported in view of the history of that element of the combination without which the invention is not useful, and that the patent as to that claim is therefore void."

In the American Bell Telephone Co. v. National Telephone Co. (C. C.) 109 Fed. 1005, Judge Addison Brown cites the foregoing authorities, and the opinion of Mr. Justice Bradley in Consolidated Electric Light Co. v. McKeesport Co. (C. C.) 40 Fed. 21, 26 et seq., for his conclusion that the Berliner patent—

"Is invalid for the reasons that the power to amend an application does not include the power to change the nature of the invention; that the right to amend or the right to complete an application under section 4894, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3384], does not give the right to transform completely; that the only remedy for a radical mistake in substance so serious as to require a transformation so complete as is here shown is a new application."

See, also, Consolidated Fruit Jar Co. v. Bellaire Co. (C. C.) 27 Fed. 381.

The rule of decision that a reissued patent cannot be expanded to embrace a new invention is as stated by Mr. Justice Bradley in Railway Co. v. Sayles, supra, equally apposite to the enlargement of an application or specifications by amendment. The enforcement of this rule in the case of reissues is not conditioned upon the fact that other patents have been applied for or granted before the reissue was taken out. It is absolute and positive. In White v. Dunbar, 119 U. S. 47–52, 7 Sup. Ct. 72, 30 L. Ed. 303, Mr. Justice Bradley states its reason thus:

"We attach no importance to the fact that, between the date of the original patent and the application for the reissue, the patent to Pecor [one of appellants] and Bartlett was granted. * * * The circumstance that other improvements and inventions, made after the issue of a patent, are often sought to be suppressed or appropriated by an unauthorized reissue, has sometimes been referred to for the purpose of illustrating the evil consequences of granting such reissues, but it adds nothing to their illegality. That is deducted from general principles of law as applied to the statutes authorizing reissues and affecting the rights of the government and the public."

The reasons which prohibit and penalize the abuse of the privilege of amending a defective patent equally condemn and invalidate the perversion by amendment of an application for one invention into an application for another.

Comparison of the original application of December 20, 1888, and its amendments with that of May 2, 1892, is demonstrative that the first had not a feature in common with the latter—except in its references to the prior art—which was not rejected on reference, or anticipated by Jeavons' patent of October 14, 1890. The latter patent embraced all that he could rightfully claim prior to April 25, 1892, under the application of December 20, 1888. After the issue of the patent of October 14, 1890, any amendment of the application which that patent necessitated must be for a new invention not patentable under the application and its amendments before that date. These facts are decisive that the additions to and departures from the original application and its amendments prior to April 25, 1892, found in the "amendment" of May 2, 1892, evidence new matter not comprised in the application or anticipation by the patent of October 14, 1890; that "such" additions or variations cannot be sustained on the original application, as is said in Sayles v. Railway Co., supra, and that if the substituted specifications of May 2, 1892, contain any invention, "it was an invention not hinted at in the original application." Whether the "main" patent, as complainant claims, displays invention of a primary character or not, if the combination in claim 1 was described in the original application and its amendments prior to April 25, 1892, it was anticipated by the patent of October 14, 1890, or, if it was not within their scope, it was for a new invention and cannot be upheld. Of course, Jeavons can have no benefit of any claims rejected by the Patent Office in the rejection of which he acquiesced. For these reasons, the first and fifth claims must be held invalid.

While the history of this patent is held fatal to its validity, the importance of the controversy and the exhaustive discussion by counsel of the other vital points in the case forbid that the disposition of interests of such moment involving expensive litigation should be rested on a single ground.

The defenses that claims 1 and 5 are drawn to invention shown and described in the earlier patent of Jeavons, and are also void for want of invention, have been fully argued, and may be briefly considered together. They lead to the same result. There are verbal differences between the descriptions of the "vapor holder" of claim 1 on the main patent and the "generator," "generating chamber," "continuous chamber," "channel," "space," "holder," etc., as this element is variously termed in rejected claims 1, 2, 5, and 6 of the first amended application, and anticipated claims 2, 3, and 4, the first 2 of which are allowed on appeal by the Commissioner and the last by the examiner, but these differences are only verbal. If they present variations of name and form, they do not suggest invention. As the claims made in the amended application as it stood prior to April 25, 1892, were anticipated by the patent of October 14, 1890, claim 1 of the main patent is equally defeated if its equivalent was

avoided by that patent or included in substance in any rejected claim made prior to April 25, 1892. The fact that in each and all of the claims mentioned, including claim 1 of the patent sued upon, the generator or vapor holder is claimed only in combination, is conclusive that it was old in the art. The same is, of course, true of every element of the claim. Rowell v. Lindsay, 113 U. S. 97, 5 Sup. Ct. 507, 28 L. Ed. 906; Miller v. Brass Co., 104 U. S. 352, 26 L. Ed. 783.

The vapor chamber or holder was quite as clearly described in claims 1, 2, 5, and 6 of the first amendment, and 2, 3, and 4 of the second and third amendments above mentioned, as in claim 1 of the patent, unless the words "constructed for the free and uniform distribution of vapor therein by gravity" define construction, which differs, for example, from claim 1 of the first amendment, which is "for * * * a generating chamber constructed to diffuse the gases throughout the chamber and for an opening for the escape of the gases." This cannot be claimed unless the words "by gravity" have that effect. This is hereafter considered. Claims 1, 2, 5, and 6 of the first amendment were characterized by the examiner as "vague and indefinite," as defining "the generator by its function, and not by its construction." This objection equally obtains to the vapor chamber of claim 1 of the main patent. It is not differentiated in structure or description from its rejected predecessors in the application by the words "by gravity." These serve only to state the means by which distribution of the vapor is effected, viz., the greater specific gravity of the vapor as compared with air. The operation of that law in the distribution of hydrocarbon vapors was not Jeavons' discovery, nor is it claimed that it was first secured by any thing in form or construction peculiar to his vapor chamber. It is present and operative in every generator. In the anticipated patent (specifications, p. 1, lines 73 to 78, inclusive) he says:

"It is, of course, understood by persons skilled in the art, that the vapors of petroleum are heavier than the atmosphere, and in a burner of this character the vapor travels around and fills the walled and covered chamber before it will voluntarily escape therefrom."

To utilize the vapor accumulated in the generator there must be, what Jeavons calls in claim 1, "a free opening for the escape of vapor, * * * of sufficient area to supply the vapor freely to the burner, * * * or combustion cannot be effected." The necessity of such an opening is a truism in all generators. The last element in this combination, "the perforated combustion walls having a flame space between them in communication with said holder," are the familiar "concentric perforated combustion tubes" in use before 1864, as shown in Morrill's patent of that year. United Blue Flame Oil Stove Co. v. Glazier, 119 Fed. 160, 55 C. C. A. 553.

This analysis of the claim, if correct, establishes that each element of its combination was old and well known. The history of the art shows that most of them, if not all, had been associated in earlier constructions. Each performs the same function in the same way as the corresponding element in earlier devices—possibly with a greater degree of efficiency—and aside from the verbal disguises employed to conceal

its age and its identity with its predecessors in the art, and its attempt to appropriate the law of gravity as a novel element, the combination presents nothing new, and claim 1 defines nothing by construction to distinguish it from the claims rejected by the examiner and renounced by the patentee's acquiescence, or from those anticipated by the patent of October 14, 1890. The argument based upon the utility and salability of the vapor burner is answered in Grant v. Walter, 148 U. S. 547–556, 13 Sup. Ct. 699, 37 L. Ed. 552, where the court held that a useful and popular article lacking in novelty was not patentable, adding:

"The advantages claimed for it, and which it no doubt possesses to a considerable degree, cannot be held to change this result, it being well settled that utility cannot control the language of the statute, which limits the benefit of the patent laws to things which are new as well as useful. The fact that the patented article has gone into general use is evidence of its utility, but not conclusive of that, and still less of its patentable novelty. McClain v. Ortmayer, 141 U. S. 419–425 [12 Sup. Ct. 76, 35 L. Ed. 800], and authorities there cited."

Complainant has planted its case upon the proposition that patent No. 475,401 is the "main patent"—"fundamental patent"—is for a generic invention, and was first applied for, while the earlier patents were for subordinate specific inventions. If this be correct, the conclusions reached as to the former should be decisive of the subsidiary devices. Each of the improvement patents, however, is made the basis of an attack upon the defendant's construction, and must be separately considered.

The bill charges defendants with the manufacture, use, and sale of vapor burners, each "embodying and conjointly using all the inventions described and claimed" in the patents sued upon, "and that defendants threaten to continue the manufacture and sale in this country of such vapor burners, in which are embodied and conjointly used in one unitary structure all the inventions severally described and claimed in said letters patent." The proofs fail to support this allegation. It would be impossible to incorporate in one operative construction the various types of "vapor distributing chambers" in the four patents sued upon, and, if so incorporated, the resultant mechanism would be an aggregation of inharmonious parts. Unfortunately complainant has failed to designate upon which of the 10 claims of the 3 earlier patents charges of infringement are predicated. The labor of their examination seriatim in the search for supposed resemblances between these and defendants' construction has thus been greatly increased.

### First Improvement Patent, No. 438,548.

The claims of this patent rest in combination only. Defendants' burner has not the closed distributing chamber, nor the narrow opening along one edge thereof, which are elements of claim 1. Claim 2 is not infringed—defendants have not the closely fitting cover of this claim. Claim 3—defendants' construction does not show a cover narrower than the base. Claim 4—"Complainant's Experimental Exhibit" —defendants' burner reveals nothing which can be identified as "a detachable cover forming a vapor cover," resting its edges in different planes. Claim 5—the proofs in the case do not point to infringement of this claim.

## Second Improvement Patent, No. 461,219.

The burner described in the specifications and claims of this patent is a pronounced departure in form and appearance of some of their elements from those shown in complainant's other patents.   The prominent elements are:

"A bowl or cup  *   *   *   having a substantially vertical flange, a, about it outside, of such depth as will afford a vapor distributing chamber.  *   *   * The bottom of the bowl is studded with a number of hollow tubular projections having a limited space between them, as seen in Fig. 1, and rising substantially to the level of flange a.   These projections are open throughout so as to take in air from the bottom, and each one is provided with a perforated tube or chimney, C, fixed firmly therein, all the said tubes rising to a common level."

The verbiage of this description, as in those of the other patents in suit, does not prevent recognition of the "perforated combustion tubes" familiar to the art, seated in the metallic bands which are attached to the bottom of the vaporizing chamber, and are of such height as to exclude the air from the tubes below their perforations, and thus prevent combustion in the vaporizing chamber.   The hollow tubular projections in which the combustion tubes are fixed serve, therefore, the same purpose by practically the same means used in the prior art, viz., the elevation of the lowest perforations of the combustion tubes or chimneys above the vapor chamber.   There is nothing in defendants' burner corresponding to the combination of any claim of this patent.   The drawing portrays a vapor burner so entirely dissimilar in structure from defendants' as to discourage search for a combination characteristic of the former which the latter has appropriated.   If the "burner bowl" of the former is a patentable, new, and distinct element in the terminology of mechanics from the polynominal part of claim 1 of the "main" patent which figures in successive stages of the application as a "generator," "vapor chamber," "holder," "channel," "space," etc., defendants' burner does not possess it.   If it is the same element under a new name, varied only in form but identical in function, it is the heritage of all inventors, and is shown in the "first improvement" patent of October 14, 1890, under one of its many aliases, and in the claims rejected on references, notably in amended claim 1.   The claims are so narrowed by their terms and the earlier constructions that if any patentable merit can be found in them it is restricted to its specific construction.

## Third Improvement Patent, No. 467,466.

The single claim of this patent is for "a vapor burner bowl constructed with closed walls upon its sides, one of which is higher than the other in respect to the bottom of the bowl, and the two lower walls forming a vapor diffusing channel between them and perforated tubes forming the combustion chamber of the burner, substantially as described."   This is also a merely structural patent for a combination of old elements, and therefore, because of the almost exact similitude of its leading element—the vapor bowl—to that of the last preceding patent, is not entitled to any liberality of construction, and is not infringed if patentable.   Its patentability need not be discussed at length.   In the

specifications (page 1, lines 24 to 32, inclusive) the patent of October 14, 1890, is sought to be distinguished, and it is stated that:

"In the original patent referred to, the vapor diffusing or distributing chamber was wholly outside of the combustion tubes, and the vapor fed therefrom into the space between the tubes. In the present invention the outside chamber is dispensed with, and the burner bowl between the combustion tubes is utilized as a diffusing or distributing portion or space for the vapor."

This change of the relative positions of the tubes and the vapor chamber or "burner bowls" scarcely rises to the dignity of invention. It is a merely structural variation which places the combustion tubes in the burner bowl or vapor chamber instead of above it, and like changes are made in other elements to limit combustion of the vapor to the space below the perforations of the tubes. All the parts sustain the same mutual relations and perform the same functions in the same way and by the same means in their new locations as in former mechanisms. The "second improvement patent," with its numerous perforated tubes, "dispenses with the outside [vapor] chamber," and the burner bowl between these metallic seats (or perforations) is also "utilized as a diffusing or distributing chamber" equally with the construction shown in the "third improvement patent."

The claim of invention, in the light of the history of the art and of the "main patent," including its rejected and anticipated claims, is of such doubtful merit that, upon the question of mechanical equivalency of defendants' burner, "that doubt should be resolved against the patentee," when, as here, the claims contain the words "substantially as described or set forth." Hobbs v. Beach, 180 U. S. 399–400, 21 Sup. Ct. 409, 45 L. Ed. 586. In Westinghouse v. Boyden Power Co., 170 U. S. 537–558, 18 Sup. Ct. 707, 42 L. Ed. 1136, it is said that the words "'substantially as described' have been uniformly held by us to import into the claim the particulars of the specifications." The application of the rule is fatal to the charge of infringement. The claim vigorously limits the relative height of   "*   *   *   sides, one of which is higher than the other," by the language of the specifications (page 1, lines 45 and 46)—"say three times as high, or in that neighborhood"—and the drawing emphasizes this limitation. In defendants' burner the height of the sides is as 1 to 1¼ instead of 1 to 3. Defendants' burner has no vapor bowl, but a vapor chamber of radically different construction. This patent is not infringed.

The number of exhibits, the volume of the record, including the proceedings in the Patent Office, and the history of the art, and the numerous claims involved, have necessitated long and laborious examination of the matters in issue. Many points presented in argument and arising upon the patents sued upon, but unnoticed in the opinion, have received attention, but their determination is not called for in the view taken of the case.

The bill is dismissed, with costs.